499 A.2d 326

**Fletcher CARRECTER, Appellant,**

v.

**COLSON EQUIPMENT CO. and the Marmon Group Inc.**

Superior Court of Pennsylvania.

Argued Feb. 2, 1984.

Filed Sept. 18, 1985.

Motion to Dismiss Appeal and Withdraw
Opinion Denied by the Superior Court
Oct. 25, 1985.

John Mattioni, Philadelphia, for appellant.

Pamela B. Gagne, Philadelphia, for appellees.

Before: SPAETH *, President Judge, and BECK and HOFFMAN, JJ.

* Spaeth, President Judge, recused himself from this case after argument and did not participate in the disposition of this case.

BECK, Judge:

The instant appeal requires us once again to reaffirm the sharp distinction which the courts of this Commonwealth have drawn between negligence suits and products liability actions based on section 402A of the Restatement (Second) of Torts. We hold that the trial court may not invite the jury to consider the reasonableness of the defendant's conduct by instructing on the "state of the art defense."

Appellant Fletcher Carrecter Jr. appeals from a judgment in favor of appellee Colson [1] entered on a jury verdict in a products liability action based upon an injury allegedly caused by a Colson Model 6055 drum truck. A drum truck is a type of hand truck specially adapted for use in moving large drums or barrels. The drum truck was manually operated by sliding forks on the bottom of the truck under a barrel, tilting the truck upward, sliding a hook-like clasp over the upper edge of the barrel, and then pulling the truck handles backward so that the barrel rested on the truck and could be rolled.

Carrecter was employed as a general laborer at Acme Hardesty Company (which is not a party to the instant litigation). Three to five days each month, Carrecter's work assignment involved lifting, moving and "palletizing" [2] 450-pound barrels using a drum truck of a type manufactured and sold by Colson between 1937 and 1957. While performing these tasks on February 14, 1977, Carrecter sustained back injuries which he attributed to his having pulled the Colson drum truck handles backwards in order to move a barrel.

In his products liability suit against Colson, Carrecter introduced evidence tending to show that the Colson drum truck, while being used to transport weights within the

---

1. At trial, Carrecter was the plaintiff, and Colson Equipment Division and the Marmon Group, Inc., were the defendants. For the purposes of this appeal, both defendants are appellees and will be collectively referred to as "Colson."

2. This maneuver required Carrecter to tilt the drum truck up onto a four or five inch high forklift pallet and release the drum so it rested on the pallet.

stated capacity of its wheels,[3] imposed forces on the user's spine greater than the human spine can safely support. Carrecter therefore argued that the truck was defective either because it was designed in a manner which subjected the user's spine to excessive force or because Colson did not warn of the maximum load capacity at which the truck could be maneuvered without placing undue stress on the user's back. Carrecter also adduced evidence linking his back injury to his use of the Colson truck.

In its answers to written interrogatories, the jury found that the Colson drum truck was not defective due to its design or lack of accompanying warnings, and a verdict was entered in favor of Colson. Carrecter's post-trial motions for judgment n.o.v. or a new trial were denied. Judgment for Colson was entered and this appeal followed.

Appellant argues that the trial judge erred in charging the jury that it could consider the engineering know-how available to Colson at the time the truck was manufactured in determining whether the truck was defective.[4] The trial court first instructed the jury that if at the time the drum truck was manufactured and left the control of Colson it "lacked any element necessary to make it safe for the use or contained any condition that made it unsafe for the use that it was intended for, then the product may be considered by you as defective and [Colson] liable for the harm caused," and that "[a] product which is designed in a manner which makes it unsafe for its intended use is defective, even though it perfectly conforms to its intended design." N.T. 8.19–8.20. However, the trial judge added

3. Evidence at trial indicated that the rated capacity of the Model 6055 drum truck in Colson's sales literature was 800 pounds. Colson's witnesses explained that this figure represented the capacity of the wheels, which were the weakest part of the truck, and that the loads borne by the user's body did not enter into this calculation.

4. Carrecter further argues that it was error for the court *not* to instruct the jury that the fact that the Colson drum truck was essentially similar to all others produced in the industry at the time was not a defense. We are inclined to agree but it is unnecessary to reach this issue because we find that the instructions which were given were erroneous.

that in assessing the alleged defectiveness of the drum truck, the jury also "must consider the engineering knowledge and the know how that was *generally available* to the manufacturer, Colson, at the time [the drum truck] was manufactured." N.T. 8.20 (emphasis added). The judge reiterated that the jury "must consider whether it was defectively designed at the time it was manufactured ... considering the engineering knowledge and know how which a manufacturer *then should have.*" N.T. 8.21 (emphasis added).[5]

 We agree that it was error to instruct the jury to consider the level of engineering know-how available to Colson in determining whether the drum truck was defective. This case was submitted to the jury on a products liability theory. In a products liability action the plaintiff need not prove negligence on the part of the manufacturer. The plaintiff must establish only that the product was defective and that the defect caused, i.e. was a substantial factor in bringing about, the harm suffered by the plaintiff. *Sherk v. Daisy-Heddon*, 498 Pa. 594, 450 A.2d 615 (1982). "Defective" is defined in terms of safety for intended use; "the jury may find a defect where the product left the supplier's control lacking any element necessary to make it safe for its intended use or possessing any feature that renders it unsafe for the intended use." *Azzarello v. Black Brothers Co.*, 480 Pa. 547, 559, 391 A.2d 1020, 1027 (1978). Therefore, the portion of the trial judge's charge which defines "defect" in terms tracking the language of *Azzarello* is correct.

5. In context, the court's instructions on "engineering know how" were more closely tied to the defective design issue than the warnings issue. However, the trial judge mentioned the inadequate warnings claim both before (at N.T. 8.20) and after (at N.T. 8.22) the state of the art charge, and did not suggest to the jury that it was *not* relevant to the warnings issue. Therefore, we will consider the propriety of the charge with respect to both the design and warning claims.

The difficulty with the latter portion of the charge inviting the jury to consider the "state of the art"[6] is that it injects negligence principles into a products liability case. In a products liability action negligence is not an element of the plaintiff's case, nor is the defendant's lack of negligence a defense. In *Azzarello* our Supreme Court was faced with the question whether it was proper to instruct the jury that it must find the defendant's product "unreasonably dangerous." The court held that the jury should not be instructed in such terms, concluding instead that the words "unreasonably dangerous" were no more than a label to be used where it is determined that the risk of loss should be placed on the supplier.[7] 480 Pa. at 555, 391 A.2d at 1025. In so holding, a majority of the Supreme Court adopted the position which a plurality had taken in *Berkebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975). In *Berkebile* the plurality, per Jones, C.J., held:

the "reasonable man" standard has no place in a strict liability case ... To charge the jury or permit argument concerning the reasonableness of a consumer's or seller's actions and knowledge, even if merely to define "defective condition" undermines the policy considerations that

6. The term "state of the art" has been given a variety of meanings, including (1) industry custom, *e.g. Sturm, Ruger & Co. v. Day*, 594 P.2d 38 (Alaska 1979), *cert. denied*, 454 U.S. 894, 102 S.Ct. 391, 70 L.Ed.2d 209 (1981); (2) government regulatory and licensing standards, e.g. *Frazier v. Kysor Industrial Corp.*, 43 Colo.App. 287, 607 P.2d 1296 (1979), *rev'd on other grounds*, 642 P.2d 908 (Colo.1982); or (3) technological feasibility or capability, *e.g. Suter v. San Angelo Foundry & Machine Co.*, 81 N.J. 150, 406 A.2d 140 (1979); Neb.Rev.Stat. 25–21, 182 (1978). In the case sub judice, the instructions given by the trial judge relate primarily to the technological feasibility aspect of state of the art, and the instructions requested by Carrecter but not given (see *supra* note 4) pertained to industry custom. As we shall explain below we believe all "state of the art" arguments may be handled similarly for purposes of this appeal.

7. When a products liability claim is pleaded the trial judge makes a threshold determination whether as a matter of social policy the case is appropriate for treatment under the rubric of products liability. In making this determination the judge acts as a combination social philosopher and risk-utility economic analyst; for a more detailed explanation of the factors to be considered, *see Azzarello; Dambacher;* and *Lobianco v. Property Protection, Inc.*, 292 Pa.Super. 346, 437 A.2d 417 (1981).

have led us to hold in *Salvador* [v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A.2d 903 (1974)]. that the manufacturer is effectively the guaranter [*sic*] of his product's safety.

462 Pa. at 96–97, 337 A.2d at 900. The *Berkebile* plurality drew support for this holding from subsection (2)(a) of § 402A of the Restatement, which provides that the seller/manufacturer is liable for harm caused by a defective product even if he "has exercised all possible care in the preparation and sale of his product."

The holdings of *Berkebile* and *Azzarello* were reaffirmed by this Court in *Dambacher v. Mallis,* 336 Pa.Super. 22, 485 A.2d 408 (1984). We summarized the legal rule tersely, stating "in a strict liability case, principles of negligence have no place." *Id.,* 336 Pa.Superior Ct. at 61, 485 A.2d at 429. Moreover, in *Dambacher* we extended *Azzarello,* which was a design defect case, to cases involving inadequate warning [8] claims. We held that the *Azzarello* instruction can and should be adapted to an inadequate warning case by charging the jury "that it is to consider whether the product was safe in the absence of warnings or in light of the warnings that were given." *Dambacher,* 336 Pa.Super. at 57, 485 A.2d at 426.

■ Examining the court's charge in light of the foregoing principles it is clear that the charge had the impermissible effect of setting up Colson's non-negligence as a defense. By instructing the jury that it should take into consideration the engineering know-how "generally available" to Colson or alternatively the knowledge which Colson "should have" had when the drum truck was manufactured, the court caused the jury to focus on the reasonableness of the defendant's conduct rather than on the safety of the product. What a defendant "should have known" is a

8. We prefer the terminology "inadequate warnings" to "failure to warn" because the latter language suggests a breach of a duty in a way which tends to connote negligence.

classic negligence inquiry which our courts have held un-
equivocally does not belong in a products liability action.
The jury found against the plaintiff Carrecter, and its
verdict clearly could have been influenced by the improper
charge, under which the jury could have found Colson not
liable even if the drum truck was in fact not safe for its
intended use. Therefore, a new trial is required.

We are aware that in *Dambacher* the majority
expressly reserved judgment on whether any special prob-
lems were posed by the use of the "state of the art"
defense in inadequate warning cases, because no "state of
the art" issues were raised in *Dambacher. See id.*, 336
Pa.Superior Ct. at n. 9, 485 A.2d at 428 n. 9. Having given
this issue full consideration, we now conclude that in the
Pennsylvania law of products liability there is no room for a
negligence based defense under the guise of "state of the
art." As we have noted above[9], the term "state of the art"
encompasses various concepts, but the common functional
feature of all "state of the art" arguments is that they
focus on the knowledge of the defendant and/or the reason-
ableness of the defendant's conduct rather than on whether
the product possessed the design features and/or warnings
necessary to make it safe for its intended use. Therefore,
we conclude that no magic inheres in the "state of the art"
label and the "state of the art" jury charge should be
treated like any other attempt to inject negligence into a
products liability case. In *Dambacher* this Court extended
*Azzarello/Berkebile* to inadequate warnings cases and de-
fined "defect" in warnings cases in terms of safety for
intended use, excluding negligence considerations. We be-
lieve this holding requires us to forbid any inquiry into the
reasonableness of the defendant's conduct in the adequate
warnings area as well as the defective design area.

As further support for this conclusion, we note that even
before *Azzarello*, this Court held in a products liability

9. *See supra* note 6.

action grounded in part on inadequate warnings that "A seller must give such warnings and instructions as are required to inform the user of the possible risks and inherent limitations of the product.... This is so regardless of whether the seller knew or had reason to know of the risks and limitations." *Pegg v. General Motors Corp.*, 258 Pa. Super. 59, and n. 10, 391 A.2d 1074, 1083 and n. 10 (1978).

In his appeal, Carrecter has additionally raised several other bases for a new trial: (1) that the jury verdict contravened the weight of the evidence on the drum truck's safety; (2) that the expert testimony of Carrecter's witness, Dr. Simon, was improperly excluded; (3) that the trial judge exceeded the bounds of impartiality by interrogating Carrecter's witnesses; (4) that some jury instructions misrepresented the facts adduced at trial; and (5) that the trial judge did not solicit a general verdict. Since our review of the defective product charge compels us to order a new trial, we deem it unnecessary at this time to consider the other claims raised by Carrecter.[10]

Judgment reversed and case remanded for a new trial. Jurisdiction is relinquished.

**10.** Carrecter further alleges on appeal that the trial court erred by not entering a judgment n.o.v. on the basis that the evidence of record unequivocally established that the Colson drum truck was defective. In reviewing the denial of a judgment n.o.v., this Court examines the evidence and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Burch v. Sears, Roebuck and Co.*, 320 Pa.Super. 444, 467 A.2d 615 (1983). Judgment n.o.v. cannot be entered unless " 'the facts are such that two reasonable persons could not fail to agree that the verdict was improper.' " *Dambacher*, 336 Pa.Super. at 33, 485 A.2d at 414 (citation omitted). "[A]ny doubts should be resolved in favor of the verdict." *Tyus v. Resta*, 328 Pa.Super. 11, 17, 476 A.2d 427, 430 (1984). Under this scope and standard of review and the facts of this case, we hold that the trial court did not err in refusing to enter a judgment n.o.v. The evidence on the safety of the drum truck was conflicting and a reasonable jury could evaluate the evidence in favor of either side.