## In re HAWAII FEDERAL ASBESTOS CASES.

**This Document Applies to Trial Group I:**

Nakagawara, Masami, Lee–Kwai, Raymond (dcd), Pacleb, Daniel L., Sr., Kane, Raymond K., Davacol, Juan M., Tam, Clarence S.L., Boyd, Thomas (dcd), Low, Francis Leen (dcd), Aguiar, Daniel, Powell, Hony Edward (dcd), Gamurot, Mariano (dcd), Dang, Stanley J.S. (dcd), Fisel, Charles H., Sawyer, Stephen Charles (dcd), Prudeaux, George J., Boerner, Eugene F., Oliver, Kenneth C., Williams, Felton Kline (dcd), Kim, Clarence K.N., Kaiu, David K., Seiwerath, Leo B., Aligado, Cornelio P., Miyasato, Harry Koichi (dcd), Olsen, Hiram K., Monderen, Toledo, Furtado, Herbert, DeSilva, Henry, Isara, Raymond S., Gascon, James B.V., Pagan, Alexander, Sr., Barcelona, Juan O., Silva, Libert S., Shigemoto, Soichi, Yonekawa, Charles S. and Ching, Francis K.Y.

Civ. Nos. 85–0447, 85–1374, 85–1442, 86–0669, 87–0375 ACK, 87–0377 HMF, 87–0409 VAC, 87–0412 ACK, 87–0413 VAC, 87–0414 HMF, 87–0492 ACK, 87–0508 VAC, 87–0539 HMF, 87–0542 HMF, 87–0563 HMF, 87–0770 HMF, 87–0829 VAC, 87–0872 HMF, 87–0928 VAC, 87–0929 HMF, 87–0933 VAC, 87–10414, 87–11415, 87–12420, 87–12421, 87–12423, 87–12425, 87–12426, 87–12427, 87–12429, 87–12430, 87–12432, 87–12433, 87–13362 and 88–00034 HMF.

United States District Court, D. Hawaii.

Nov. 1, 1988.

L. Richard DeRobertis, Derek S. Nakamura, Gary O. Galiher, Galiher DeRobertis, Law Corp., Honolulu, Hawaii, for plaintiffs.

Michael F. O'Connor, Stan Chow, Ezra, O'Connor, Moon & Tam, Honolulu, Hawaii, for defendant Eagle–Picher Industries.

Frank Bondonno, Roy F. Hughes, Honolulu, Hawaii, for defendant Owens–Corning Fiberglas Corp.

John S. Nishimoto, Raymond Nisihida, Libkuman, Ventura, Ayabe & Hughes, Honolulu, Hawaii, for defendants Pittsburgh–Corning, Owens–Corning Fiberglas, Owens–Illinois, Armstrong, Keene Co., Flintkote, GAF, H.K. Porter Co.

Jerold T. Matayoshi, Greely, Walker & Kowen, Honolulu, Hawaii, for defendant Owens–Illinois Corp.

William S. Hunt, Paul, Johnson, Alston & Hunt, Honolulu, Hawaii, for defendant Pittsburgh–Corning Corp.

George W. Playdon, Jr., Reinwald, O'Connor, Marrack, Hoskins & Playdon, Honolulu, Hawaii, Richard B. North, Jr., Neely & Player, Atlanta, Ga., for defendants Raymark, Carey Canada, Inc., and Celotex Corp.

Robert G. Frame, Alcantara & Frame, Honolulu, Hawaii, James L. Miller, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant Fibreboard Corp.

## OPINION RE:
## STATE–OF–THE–ART DEFENSE

BELLONI, District Judge.

The evidentiary question at issue is whether in a strict liability case the manufacturer is conclusively presumed to know the dangers inherent in his product, or whether state-of-the-art[1] evidence is admissible to establish whether the manufacturer knew or through the exercise of reasonable human foresight should have known of the dangers posed by his product. I hold that state-of-the-art evidence is irrelevant and therefore inadmissible in the strict liability phase of this asbestos litigation.

BACKGROUND

This is a consolidated case wherein thirty-five former Pearl Harbor Naval Shipyard employees seek damages against multiple defendants for injuries allegedly

---

1. "State of the art" refers to facts which were either known or discoverable in light of the scientific and technological knowledge available to the defendants at the time the products were produced and distributed. Prosser & Keeton on Torts, § 99, 700–01 (5th ed. 1984).

caused by inhaling asbestos dust from products manufactured or sold by defendants. Plaintiffs' theories of recovery are strict liability, negligence, and punitive damages. The strict liability claim has two specifications—the product was dangerously defective because it contained a design defect, and the defendants failed to warn of its danger.

DISCUSSION

As relevant to this case, a product may be dangerously defective so as to subject a manufacturer or seller to strict liability for injuries in two ways. First, a product may be defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. *Ontai v. Straub Clinic & Hospital Inc.*, 66 Haw. 237, 242–43, 659 P.2d 734, 739–40 (1983). Second, a product may be dangerously defective because the manufacturer failed to adequately warn end users and foreseeable bystanders of the full dangers associated with the use of their product.

These two theories of liability, design defect and failure to warn, while clustered under the single heading of strict product liability, are distinct and separate concepts. Therefore, the admissibility of the "state-of-the-art" defense as it relates to these two causes of action must be discussed individually.

Design Defect Theory

■ It is clear that under Hawaii law, "in a strict liability action, state-of-the-art evidence is not admissible for the purpose of establishing whether the seller knew or reasonably should have known of the dangerousness of his or her product." *Johnson v. Raybestos–Manhattan, Inc.*, 68 Haw. ——, 740 P.2d 548, 549 (1987). The seller's knowledge of the dangers inherent in it's product, "although highly relevant to a negligence action, has absolutely no bearing on the elements of a strict products liability claim." *Id.; see also Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 438 (Mo.1984) (negligence based defense of state-of-the-art not permitted in asbestos strict liability cases).

While the *Johnson* opinion is unequivocal in its rejection of the state-of-the-art defense in design defect cases, it left several related issues unresolved. First, the Hawaii court did "not address the failure to warn cause of action and whether state-of-the-art evidence should [be] admissible for that cause of action." *Id.* 740 P.2d at 549 n. 2. Since failure to warn is a separate concept, I will reserve discussion of that theory as it relates to the state-of-the-art defense until later.

Second, the court in *Johnson v. Raybestos–Manhattan, Inc.* left open the issue of "[w]hether or not state-of-the-art evidence is probative of some other factor that is relevant in a strict liability action (e.g., consumer expectations, which bears on whether a product is defective) and [would] therefore [be] admissible for that limited purpose." *Id.* 740 P.2d at 549 n. 3.

I can think of no situation where such evidence would be relevant for any purposes in these strict liability cases. Under strict liability, culpability is irrelevant. Negligence is never an element of plaintiff's case, nor is defendant's lack of negligence a defense. Rather, the only issue is whether the manufacturer supplied the consumer with a defective product which caused plaintiff's injuries. That the product was unsafe because of the state of the technology does not change the fact that it was unsafe. Thus, whether or not the manufacturer had reason to know of the danger will virtually always be irrelevant in determining whether the product was dangerously defective. Moreover, defense counsel has not suggested a situation where state-of-the-art evidence could possibly be relevant in the strict liability phase of this asbestos litigation. Therefore, such evidence may not be introduced in these strict liability, design defect proceedings. *Johnson v. Raybestos–Manhattan, Inc.*, 68 Haw. ——, 740 P.2d 548, 549 (1987).

Failure to Warn

■ As stated previously, the *Johnson* holding left open the question of whether state-of-the-art evidence should be admissible when the plaintiff proceeds on a failure to warn strict liability theory of recovery.

I hold that state-of-the-art evidence is irrelevant in both design defect and failure to warn causes of action.[2]

A review of Hawaii law supports this conclusion. The rule in Hawaii is that the plaintiff need only show that a product is dangerously defective and that it was the proximate cause of the injury. *Ontai v. Straub Clinic & Hospital Inc.*, 66 Haw. 237, 243, 659 P.2d 734, 740 (1983); *Johnson v. Raybestos–Manhattan, Inc.*, 68 Haw. ——, 740 P.2d 548, 549 (1987). Admittedly, "failure to warn" is misleading because it implies negligent concepts with their attendant focus on the reasonableness of defendants' behavior. Nevertheless, Hawaii law prohibits the introduction of concepts such as "unreasonableness" and "foreseeability" into product liability actions because it confuses the jury by equating strict liability with a negligence cause of action. *Boudreau v. General Elec. Co.*, 2 Haw.App. 10, 15–16, 625 P.2d 384, 389 (1981).

In this same vein, the Hawaii courts have attempted to exclude all negligence concepts from its strict liability actions by rejecting the Restatement (Second) of Torts § 402A "unreasonably dangerous" standard in regards to product "defect."[3] Rather, Hawaii uses a "dangerously defective" standard, which effectively excludes all reference to negligence based concepts. *Ontai*, 66 Haw. at 241, 659 P.2d at 739; *Brown v. Clark Equipment Co.*, 62 Haw. 530, 542, 618 P.2d 267, 275 (1980).

More importantly, a major concern of strict liability is that if a product was in fact defective, the distributor of that product should compensate its victims for the great misfortune that has been inflicted upon them. *Stewart v. Budget Rent–A–Car Corp.*, 52 Haw. 71, 470 P.2d 240 (1970). The Hawaii court held in *Johnson* that a plaintiff alleging design defect need not plead and prove that the danger was known to the manufacturer. In light of Hawaii public policy, clearly there is no reason to impose a greater burden on the plaintiff in a case in which the absence of a warning constituted the defect.[4]

Defendants maintain that imposing strict liability on a manufacturer for failure to warn of an unknown risk is tantamount to making the manufacturer an absolute insurer of its product. This assertion is without merit. As the Hawaii Supreme Court noted in *Johnson* in response to this allegation, "[t]he defendants are not liable for any harm caused by their products unless the plaintiff shows that the product is dangerously defective." *Johnson v. Raybestos–Manhattan, Inc.*, 740 P.2d at 550. Clearly, defendants are not absolutely liable because plaintiffs are never relieved of their primary burden of proof, that of establishing the product's dangerousness by a preponderance of the evidence.

Many courts which have addressed this issue in relation to the failure to warn theory have likewise rejected state-of-the-art evidence because it improperly turns strict product liability into a negligence action.

In *Carrecter v. Colson Equipment Co.*, 346 Pa.Super. 95, 499 A.2d 326, 330–31 (1985) (cited with approval in *Johnson v. Raybestos–Manhattan Inc.*, 740 P.2d at 549), the Pennsylvania Supreme Court held in a failure to warn case that in "products liability there is no room for a negligence

---

**2.** I reached an identical conclusion two years ago in the consolidated Pearl Harbor asbestos cases. *See In re Hawaii Federal Asbestos Cases*, 665 F.Supp. 1454 (D.Haw.1986). That opinion foreshadowed the Hawaii Supreme Court's ruling in *Johnson*.

**3.** Moreover, while comment j to § 402A provides that warnings must be given *if* the seller has knowledge of the dangers, that comment only applies to products which cause allergic reactions in the general population. Certainly, an asbestos-related injury can not be classified as an allergic reaction.

**4.** Perhaps this was the Ninth Circuit's reasoning when it held that the *Johnson* rule also applied to failure to warn strict liability claims brought in the Federal District Court of Hawaii. *Johnson v. Raybestos–Manhattan, Inc.*, 829 F.2d 907 (9th Cir.1987) (appeal following Hawaii Supreme Court's ruling in *Johnson*). The Ninth Circuit held that state-of-the-art evidence was inadmissible under Hawaii law in failure to warn cases.

based defense under the guise of 'state of the art.'" State-of-the-art confuses the issues because it focuses on "the reasonableness of defendant's conduct rather than on whether the product possessed the design features and/or warnings necessary to make it safe for its intended use." *Id.* 499 A.2d at 331. "Defect" in warnings cases is defined as "safety for intended use," and this necessarily excludes all negligence considerations. *Id.*

The Washington courts have developed a similar rule in failure to warn cases.[5] "The rule is one of strict liability, making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product." *Lockwood v. AC & S, Inc.,* 44 Wash.App. 330, 722 P.2d 826, 834 (1986), *aff'd,* 109 Wash.2d 235, 744 P.2d 605 (1987) (quoting *Lenhardt v. Ford Motor Co.,* 102 Wash.2d 208, 212–13, 683 P.2d 1097, 1100 (1984)). The appropriate "focus is on the warning itself [or lack thereof] and the reasonable expectations of the consumer, not upon the manufacturer's conduct." *Kisor v. Johns–Manville Corp.,* 783 F.2d 1337, 1341 (9th Cir.1986) (interpreting Washington law in failure to warn strict liability cause of action).

The more important inquiry, however, is whether imposition of liability for failure to warn of undiscoverable dangers will advance the goals and policies sought to be achieved by Hawaii's strict liability rules. The Hawaii Supreme Court has historically been one of the most liberal when applying strict liability law. As the Hawaii Supreme Court noted in *Stewart v. Budget Rent–A–Car Corp.,* 52 Haw. 71, 74, 470 P.2d 240, 243 (1970), strict liability law is meant to afford to consumers and users the "maximum possible protection that the law can muster against dangerous defects in products." Consequently, I believe Hawaii's public policy will be advanced by rejecting the state-of-the-art defense in the strict liability phase of this asbestos litigation.

## Risk Spreading

One of the most important arguments generally advanced for imposing strict liability is that manufacturers and distributors can best allocate the costs of the injuries which result from their defective products. *Stewart,* 52 Haw. at 74–75, 470 P.2d at 243. In other words, those persons can insure against liability and then incorporate the cost of that insurance into the price of the product. In this way, the burden of accidental injuries caused by a defective product is placed upon those who profit from it as a cost of doing business. *Id.*

Defendants maintain that this policy is not advanced by the imposition of liability for unknowable hazards. Because these types of hazards can not be predicted, the price of the dangerous product will not be adjusted to reflect the costs of the injuries it may eventually produce. Defendants argue that these costs will ultimately be borne by the public at large in the form of higher prices for these defective products.

While there is some truth to this contention, it is not entirely persuasive. Spreading the costs of injuries among all those who produce, distribute and purchase manufactured products is far preferable to imposing it on the innocent victims who suffer disability or even death from defective products. This premise is at the very heart of our strict liability rules. *Id.* Moreover, this important public policy consideration is unaffected by the state of scientific knowledge available at the time of manufacture.

## Accident Avoidance

The manufacturer of a product is also in the best position to make a cost-benefit analysis between accident costs and accident avoidance costs. Calabresi & Hirschoff, "Toward a Test for Strict Liability in Torts," 81 Yale L.J. 1055, 1060 (1972). Therefore, the manufacturer, as opposed to the naval shipyard worker, is in a better position to judge whether avoidance costs would exceed foreseeable accident costs

---

5. In 1981, the Washington legislature enacted the Tort Reform Act which altered the substance of Washington product liability law. Specifically, it eliminated the failure to warn strict product liability cause of action. *See* Wash.Rev.Code §§ 4.22.005 and 7.72.010. Nevertheless, prior to abandoning this theory of recovery, the rule of law in Washington was that state-of-the-art evidence was inadmissible in failure to warn cases.

**238**

and then act upon that decision once it is made.

This is true even though the product's dangers were unknown, or even unknowable. The state-of-the-art at any given time is partly determined by how much an industry invests in safety research. By imposing on manufacturers the costs of the failure to discover hazards, we create an incentive for them to invest more actively in product safety research. *Stewart*, 52 Haw. at 74–75, 470 P.2d at 243.

Fact-finding Process

It is also universally acknowledged that one of the original reasons for adopting the theory of strict liability was to save the plaintiff from the difficulty and expense of proving negligence on the part of the manufacturer. Wade, "On the Nature of Strict Tort Liability for Products," 44 Miss.L.J. 825, 826 (1973). It is clear that this fundamental principle would be completely defeated were the defendants permitted to introduce evidence pertaining to the "reasonableness" of their conduct.

CONCLUSION

In the final analysis, it is clear that liability should not be conditioned upon the manufacturer's having knowledge or reason to know of the dangers associated with its product. State-of-the-art is a negligence defense which has no place in any strict liability action under Hawaii law. This rule of evidentiary law is equally applicable in both design defect cases and in failure to warn cases. Therefore, Defendants may not introduce state-of-the-art evidence for the purpose of establishing whether the seller knew or should have known of the dangerousness of asbestos in their products.