**Elizabeth & Milton SHEPPARD**

v.

**GLOCK, INC. and Glock, G., es.m.b.h.**

Civ. A. No. 96–5533.

United States District Court,
E.D. Pennsylvania.

April 30, 1997.

**472**

Thomas J. Mettee, Philadelphia, PA, for Plaintiffs.

Joseph F. McNulty, Jr., Post & Schell, P.C., Philadelphia, PA, John Renzulli, Christopher P. Orlando, Renzulli, Gainey and Rutherford, New York City, for Glock, Inc.

Joseph F. McNulty, Jr., Post & Schell, P.C., Philadelphia, PA, for Glock, G. es.m.b.h.

*MEMORANDUM*

BARTLE, District Judge.

This is a diversity products liability action. Pending before the court are the motions of defendants Glock, Inc. ("Glock America") and Glock, G. es.m.b.h. ("Glock Austria") for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Plaintiff Elizabeth Sheppard was employed as a police officer by the City of Philadelphia in 1994. On August 17, 1994, she was "qualifying" at the Philadelphia pistol range with a Glock Model 17, 9 millimeter firearm ("Glock 17"). The pistol discharged a round of fire into Ms. Sheppard's right thigh when she holstered it. Ms. Sheppard contends that a defective design in the Glock 17 caused the discharge.[1] Defendants assert that Ms. Sheppard had her finger on the trigger when she holstered the weapon.

Plaintiffs filed the instant lawsuit on August 8, 1996.[2] Ms. Sheppard claims damages on theories of strict liability, breach of warranty, and negligence, and her husband, plaintiff Milton Sheppard, asserts a claim for loss of consortium. On October 25, 1996, the court entered a written Scheduling Order setting forth various discovery and other pretrial deadlines as well as the date for the case to be placed in the court's trial pool. Plaintiffs' counsel missed the March 1, 1997 deadline for production of liability expert reports. On March 11, 1997, he moved to amend that deadline and all deadlines in the Scheduling Order. We denied the motion. On March 24, 1997, defendants moved to preclude plaintiffs from providing liability expert testimony at trial. We granted the motion on April 1, 1997.

■ Defendant Glock America moved for summary judgment on March 31, 1997. Defendant Glock Austria moved for summary judgment on April 2, 1997, joining in Glock America's memorandum. Their argument is as follows. In a products liability action, a plaintiff must prove that the product was defective and that the defect was a substantial factor in bringing about the plaintiff's

---

1. Glock Austria designs and manufactures the pistols. Glock America assembles and sells them.

2. Plaintiffs also sued Lawmen Supply Company of New Jersey, Inc. That defendant was dismissed by stipulation on October 1, 1996.

injury. *Carrecter v. Colson Equip. Co.*, 346 Pa.Super. 95, 499 A.2d 326, 329 (1985). Defendants maintain, and plaintiffs concede, that plaintiffs cannot prove that the Glock 17 was defective without expert testimony. *See, e.g., Electron Energy Corp. v. Short*, 408 Pa.Super. 563, 597 A.2d 175, 180 (1991), *aff'd*, 533 Pa. 66, 618 A.2d 395 (1993). Plaintiffs also concede that, unless we vacate our order precluding such testimony, summary judgment in defendants' favor is mandated. Consequently, they argue in their "answer" to defendants' summary judgment motions that we should vacate that order, although they have not filed a motion requesting that we do so. The sole issue for resolution, then, is whether exclusion was the appropriate sanction for the failure of plaintiffs' attorney to abide by the Scheduling Order.

Rule 16(f) of the Federal Rules of Civil Procedure authorizes sanctions for the failure of a party or a party's attorney to obey a scheduling order. It provides that the court "may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B),(C),(D)." Id. One acceptable penalty is "prohibiting th[e] party from introducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(B). We imposed that sanction here.

In doing so, we were mindful that the exclusion of evidence is an "extreme" sanction. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds, Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985), *aff'd*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). We also recognized that "when evidence preclusion is tantamount to a dismissal," as in this case, preclusion is proper only when dismissal would be proper as well. *See* 3 James Wm. Moore et al., Moore's Federal Practice § 16.92[5][c][i] (3d ed.1997).

▮▮▮ The Court of Appeals for the Third Circuit has opined on the propriety of dismissal as a penalty for dilatory pretrial conduct. In *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir.1984), it instructed that the district court should weigh:

(1) the extent of the party's personal responsibility;

(2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a history of dilatoriness;

(4) whether the conduct of the party or the attorney was willful or in bad faith;

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and

(6) the meritoriousness of the claim or defense.

*Id.* at 868. The critical factor is willfulness or bad faith, although dismissal may, in select situations, be fitting even absent willfulness or bad faith. *Estate of Spear v. Commissioner of I.R.S.*, 41 F.3d 103, 112 (3d Cir.1994). Indeed, while all of the above factors must be considered, dismissal can be appropriate even when some of the factors are not met. *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir.1988), *cert. denied*, 488 U.S. 1005, 109 S.Ct. 786, 102 L.Ed.2d 777 (1989). With these principles in mind, we assess whether exclusion of plaintiffs' liability expert (and hence the grant of summary judgment against plaintiffs) is in fact the appropriate sanction here.

### I. The Extent of the Sheppards' Personal Responsibility

▮▮▮ There is no evidence that the Sheppards were in any respect personally responsible for the delays in this case. The record reveals that, when requested to do so, they have appeared for depositions and testified with candor. Having said that, "the [plaintiffs'] lack of responsibility for their counsel's dilatory conduct is not dispositive, because a client cannot always avoid the consequences of the acts or omissions of its counsel." *Poulis*, 747 F.2d at 868.

### II. The Prejudice to Glock America and Glock Austria Caused by the Failure of Plaintiffs' Counsel to Meet Scheduling Orders and Respond to Discovery

Defendants have been prejudiced by the failure of plaintiffs' counsel to meet the March 1 deadline for production of liability expert reports in several respects. First, defendants were obliged to file a motion to

preclude plaintiffs' liability expert. Second, defendants' own liability expert reports were due on March 31, 1997, thirty days after plaintiffs'. Defendants' experts plainly needed to evaluate plaintiffs' expert reports before that date but were unable to do so. Finally, and most importantly, the dilatoriness of plaintiffs' counsel, particularly in a products liability case, has substantially impeded defendants' ability to prepare an adequate defense.

Plaintiffs' counsel counters that he negated any prejudice by identifying all of plaintiffs' experts on March 31 and providing plaintiffs' liability expert report on April 8, 1997. We are not convinced. Eventual production is not the same as timely production. This case is scheduled for the May, 1997 trial pool. Due to the tardiness of plaintiffs' counsel, defendants had little more than three weeks, rather than almost nine weeks, to digest, evaluate, and rebut plaintiffs' expert report. Moreover, defendants' ability to have their own liability expert present a cogent report by March 31 was negated, not merely prejudiced, by the untimely actions of plaintiffs' attorney.

### III. History of Dilatoriness by Plaintiffs' Counsel

"Time limits imposed by the rules and the court serve an important purpose for the expeditious processing of litigation ... [a] history by counsel of ignoring these time limits is intolerable." *Poulis,* 747 F.2d at 868. Plaintiffs' counsel had such a history in this case. This action began on August 8, 1996. Plaintiffs served defendant Glock America with the complaint on September 18, 1996. On October 10, 1996, the court's deputy clerk sent an important notice to all counsel advising them that a status conference would be held in chambers pursuant to Rule 16 of the Federal Rules of Civil Procedure. The notice advised counsel that the status conference would include discussion of:

(d) time limitations within which additional parties may be joined and pleadings may be amended, if necessary;

(e) scheduling for remaining pretrial proceedings including discovery deadlines, filing of motions, hearings, and future pretrial conferences if deemed necessary;

(f) scheduling a date for trial....

These and other scheduling issues were discussed during the status conference on October 25, 1996. The court emphasized, as it does in every case, that all scheduled dates were firm. Only an extraordinary happening could be a basis to dislodge a date, particularly if it would affect the timing of the trial. Plaintiffs' counsel understood and acknowledged that point. The court immediately entered a written Scheduling Order after the conference ended which confirmed the discussion in chambers. The following dates contained in the Order are particularly relevant:

1. All discovery shall proceed forthwith and continue in such manner as will assure that all requests for, and responses to, discovery will be served, noticed and completed by March 31, 1997.

2. Any summary judgment motion or other dispositive motion, together with supporting brief, shall be filed and served on or before March 31, 1997....

5. The case will be placed in the trial pool on May 1, 1997.

6. Plaintiff(s) shall serve reports of liability expert witnesses and/or respond to expert witness discovery relating to liability at least thirty (30) days before completion of discovery. Plaintiff(s) shall serve reports of expert witnesses on damages and/or respond to expert witness discovery relating to damages at least fifteen (15) days before the date for completion of discovery.

7. Defendant(s) shall serve any reports of liability expert witnesses and/or respond to expert witness discovery relating to liability on or before the date for completion of discovery. Defendant(s) shall serve any reports of expert witnesses on damages and/or respond to expert witness discovery relating to damages within eleven (11) days after the date for completion of discovery.

Plaintiffs' counsel began to disregard this Scheduling Order, the Federal Rules of Civil Procedure, and basic rules of litigation practice soon thereafter.

Under Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure, the parties' initial disclosures were due, at the latest, within ten days of October 25. Defendant Glock America timely produced its initial disclosures on November 4, 1996. Plaintiffs' counsel did not. On November 6, 1996, Glock America served Interrogatories and a Request for Production of Documents on plaintiffs. *See* Glock, Inc.'s *Motion to Compel Plaintiffs' Rule 26 Disclosures and Answers to Discovery* (hereinafter "Motion to Compel"), Exh. A.[3] Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, answers to the interrogatories and responses to the requests for production of documents were due by December 6, 1996. Plaintiffs' counsel disregarded that deadline. On January 9, 1997, counsel for Glock America sent a letter to plaintiffs' counsel explaining that these responses were overdue. He also reminded plaintiffs' counsel that plaintiffs' initial disclosures under Rule 26 of the Federal Rules of Civil Procedure were long overdue. Glock America's attorney asked that plaintiffs' counsel "respond as soon as possible so we may avoid judicial intervention." Motion to Compel, Exh. B. Plaintiffs' counsel did not do so. On January 30, 1997, Glock America moved to compel all unproduced and unresponded-to discovery. We granted the motion on February 4, 1997.

On February 10, plaintiffs' counsel provided some of the necessary discovery. However, he skirted around the issue of expert testimony. Plaintiffs' Rule 26 disclosures stated that:

> Plaintiffs have not yet made a determination as to which experts they may retain for trial to present evidence under Rule 702, 703, or 704 of the Federal Rules of Evidence. Plaintiffs will supplement this disclosure as appropriate.

Defendants' Verified Supplemental Filing in Support of Summary Judgment (hereinafter "Defendants' Supplemental Filing"), Exh. J. Plaintiffs' full response to Glock America's Interrogatory No. 14, which asked plaintiffs to identify in considerable detail any potential expert whom they may call as a witness, was "not yet retained." Plaintiffs' Supplemental Filing at ¶ 26; Defendants' Supplemental Filing, Exh. L. Likewise, plaintiffs' response to Request for Production of Documents No. 23 declared:

> A determination as to what individuals will be called as expert witnesses at trial has not yet been made. Once this determination has been made, copies of all expert reports and curriculum vita will be provided to defendants' counsel *within the deadline for production of expert reports.*

Defendants' Supplemental Filing, Exh. L (Emphasis added). Despite these explicit representations to opposing counsel, made only twenty days before plaintiffs' liability expert report was due under the Scheduling Order, plaintiffs' counsel admits that he did not supplement these disclosures, did not notify defendants about retaining an expert, and *did not provide copies of all liability expert reports and curriculum vitae to defendants' counsel "within the deadline for production of expert reports."* [4] *See* Plaintiffs' Supplemental Filing, ¶ 18.

On March 7, a Friday, defendants informed plaintiffs' counsel that, given these derelictions, they would object to any attempt by the plaintiffs to introduce a liability expert at trial. Coincidentally enough, on March 11, the following Tuesday, plaintiffs' counsel filed a motion to amend the scheduling order and extend all of the dates therein by sixty days. Nowhere in that motion did plaintiffs' counsel concede or even acknowledge that the March 1 deadline had passed. He simply made the broad assertion that "both parties' ongoing investigations, as well as discovery completed thus far, have uncovered numerous disputed factual and legal

---

**3.** Despite conspicuous evidence to the contrary, including a letter dated November 6 and the fact that defendants' motion to compel was filed on January 31, 1997, plaintiffs' counsel states in Plaintiffs' Verified Response to Defendants' Supplemental Filing in Support of Summary Judgment (hereinafter "Plaintiffs' Supplemental Filing") that these requests were not served until February 5, 1997. *Id.* at ¶ 19. We are not certain if this is an inadvertent misstatement or an intentional misrepresentation.

**4.** March 15, the date for production of damage expert reports by plaintiffs, also came and went with plaintiffs' counsel taking no action.

issues that will require further discovery by both parties." Plaintiffs' Motion to Amend Scheduling Order (hereinafter "Motion to Amend"), p. 2. According to plaintiffs' counsel, one item of "further discovery" which remained outstanding as of March 11 was "examination and testing of the Glock 17 pistol in question by both plaintiffs' and defendants' experts." *Id.* In other words, plaintiffs' counsel, in this *products liability* case, had not even had the allegedly defective product examined by an expert more than seven months into the lawsuit and more than a week after the deadline for plaintiffs' liability expert report. Such tardiness cannot be countenanced.

This dilatory attitude also manifested itself throughout plaintiffs' dealings with defendant Glock Austria. Plaintiffs' counsel waited until five months after filing the Complaint, and more than two months after the status conference, to petition this court for issuance of the Letters Rogatory needed to serve that foreign defendant. Even so, we granted the petition on January 13, 1997. At that point, plaintiffs' counsel had up to sixty (60) days to perfect service on Glock Austria. He waited until almost the last day—March 11—to do so. No excuse has been proffered for this pattern of dilatoriness, and indeed, it seems that none exists. Plaintiffs' counsel was not a novice when it came to suing Glock Austria for defective design of pistols. He had done so on behalf of other clients on at least three prior occasions. Defendants' Supplemental Filing, ¶ 49. He obviously knew the procedures for service on an Austrian defendant and the deadlines involved.

IV. Willful and Bad Faith Conduct of the Plaintiffs' Attorney

Willful misrepresentations and bad faith conduct pepper the record in this case. We address these concerns categorically.

Plaintiffs' counsel maintained an offhand attitude toward experts throughout discovery. As noted, he made the following statement in plaintiffs' Motion to Amend:

Discovery which remains incomplete includes ... examination and testing of the Glock 17 pistol in question by both plaintiffs' and defendants' experts ... and pro-

duction of liability and damages expert reports by plaintiffs and defendants.

Motion to Amend, pp. 2–3. Thus, on March 11, 1997, *ten days* after the deadline for the production of liability expert reports, plaintiffs' counsel admits that his liability expert had *not even examined the pistol.* This conduct smacks of a willful disregard of the court's Scheduling Order.

We find another maneuver even more troublesome. The written report of plaintiffs' medical expert, Dr. Sherman Leis, was dated February 20, 1997. However, plaintiffs' counsel did not disclose the report to defendants until March 31, 1997—some sixteen days after the deadline for production of such report. Defendants' Supplemental Filing, ¶ 45. In other words, plaintiffs' counsel actually had this report for almost a month before the March 15 deadline for production of damage expert reports but failed to turn it over to defendants. While plaintiffs' counsel denies that this was done in bad faith, he fails to offer any other plausible explanation for the delay. Plaintiffs' Supplemental Filing, ¶ 45.

Finally, we note that plaintiffs' counsel has represented other clients against these exact defendants in the past and retained experts in those cases. In fact, one of those cases is pending in this judicial District before our colleague, The Honorable Raymond J. Broderick. *Kimchuk v. Glock, Inc.,* No. 95–CV–8023. Plaintiffs' counsel commenced that lawsuit on December 28, 1995, well before he filed suit in the pending case. A review of the docket in *Kimchuk* bolsters our belief that plaintiffs' counsel has not been forthright in his dealings with this court, particularly with respect to experts. The docket in *Kimchuk* reveals that on January 17, 1997, defendants Glock America and Glock Austria moved to compel the deposition of plaintiff's experts, one of whom was *Lama S. Martin. Kimchuk,* Docket Entry # 30, 1/17/97. Mr. Martin, of course, is the very liability expert whose report was not produced in this case until April 8, 1997, more than four weeks after the deadline set forth in the Scheduling Order. This revelation casts doubt on the propriety of the actions of plaintiffs' counsel during this litigation. His contention that as

of February 10, 1997 he had not retained a liability expert for this case is dubious, as he had identified Mr. Martin as his liability expert in *Kimchuk* one month earlier. His failure to identify Mr. Martin in this case by March 1 lacks any justification. The fact that, as of March 11, 1997, Mr. Martin had not yet evaluated the Glock 17 is equally indefensible. While we are aware that *Kimchuk* is a separate case, no reason has been advanced why someone identified as an expert as early as January 17 in that case could not have meaningfully participated in this case by March 1.

As noted above, plaintiffs' counsel stated in plaintiffs' responses to Interrogatories and Requests for Production of Documents, served on February 10, 1997, that he would timely supplement all responses. He did not do so. His general failure to supplement discovery as promised and as required by the Federal Rules also intimates bad faith.

Finally, we find that plaintiffs' "answer" to the defendants' motion for summary judgment, drafted by plaintiffs' counsel, is filled with apparent and obvious misstatements and spurious arguments. For example, plaintiffs' counsel states that he "promptly" petitioned the court for the issuance of Letters Rogatory to implement service on Glock Austria. Plaintiffs' Answer to Defendants' Motion for Summary Judgment, Memorandum of Law, at 3. That is simply not the case. Not until January 8, 1997, *five* months after the suit was instituted and more than two months after the status conference, did plaintiffs' counsel petition the court for Letters Rogatory.

Plaintiffs' counsel also makes the following argument, *for the first time*, in plaintiffs' "answer" to summary judgment:

> The plaintiffs *assumed* that the court's extension of time to effect service of process on Glock–Austria necessarily had the effect of overriding the original deadlines imposed by the scheduling order entered by the court on October 25, 1996 for the following reasons: (a) because of the delay in bringing Glock–Austria into this action as a party defendant, (b) because the First Scheduling Order entered by the court on October 25, 1996 appeared to be a form scheduling order which assumes the presence of all named parties, plaintiffs and defendants, before the court, and (c) because if the scheduling order were to apply to Glock–Austria, Glock–Austria would only have a very limited time, after international service of process, within which to complete discovery. Accordingly, the plaintiffs did not complete the identification of their expert witnesses or present to the court the expert witness reports that they intended to rely on at trial of this case within the deadline originally set out in the scheduling order, i.e., by March 1, 1997. (Emphasis added).

*Id.* This "assumption," if it in fact was made, was ill-advised. It rests on wholly unavailing arguments. First, as recounted above, any delay in serving Glock Austria was the fault of plaintiffs' counsel. That does not justify an implication that the Scheduling Order deadlines were invalid. Second, the Scheduling Order entered in this case was not a "form" scheduling order entered by rote. The Order was entered after careful consultation with counsel at a status conference in chambers as to the appropriate deadlines. Finally, if late service upon Glock Austria left it with only a short time to complete discovery, that was Glock Austria's concern. Perhaps that circumstance provided Glock Austria with good reason to seek an extension of the discovery deadline, although it did not. In any event, Glock Austria's shrinking window of discovery in no way affected plaintiffs' ability to submit a liability expert report by March 1. Plaintiffs' counsel knew from the outset that Glock Austria was a defendant. He knew that he would need an expert. He knew, as of October 25, 1996, that his liability expert reports were due on March 1, 1997. The fact that plaintiffs' counsel waited until after March 1 to serve Glock Austria is immaterial. In short, the argument that the foregoing factors created an "assum[ption]" that the deadlines in the Scheduling Order were overridden lacks credence. If plaintiffs' counsel truly believes otherwise, he evidently, and mistakenly, does not put much stock in Orders of this court.

Plaintiffs' counsel offers one additional rationale for his delay. He avers that the

Order granting plaintiffs until March 15, 1997 to serve Glock Austria conflicted with the deadlines in the Scheduling Order and therefore implicitly vitiated the latter. He relies on a decision of the Court of Appeals for the First Circuit, *Vulcan Tools of Puerto Rico v. Makita USA, Inc.*, 23 F.3d 564 (1st Cir.1994), to support this argument. In *Vulcan*, the magistrate judge assigned to the case entered an order on November 4, 1991 establishing December 15, 1991 as the deadline for discovery and December 30, 1991 as the deadline for filing dispositive motions. *Id.* at 565. In March, 1992, plaintiff Vulcan moved to set a trial date. Defendant Makita objected because Vulcan had not responded to certain discovery. On April 27, 1992, the district court granted Vulcan additional time to produce discovery, setting June 30, 1992 as the deadline. *Id.* at 566. The court never set a new deadline for filing dispositive motions. As trial approached in August, 1992, Makita moved for summary judgment. Vulcan argued that as the original date for dispositive motions, December 30, 1991, had not been explicitly vacated, it was still in effect and Makita's motion was untimely. The district court disagreed and considered the motion. The First Circuit affirmed, noting:

> [b]ecause the original cut-off date for filing dispositive motions fell after the original discovery deadline, the court's finding that a change in the latter necessarily abolished the former is eminently reasonable.

*Id.*

*Vulcan* is not this case. There, a subsequent order of the district court directly conflicted with deadlines in the original Scheduling Order. Obviously, if discovery was not closed until June 30, 1992, Makita could not file a dispositive motion based on all discovery by December 30, 1991. No similar conflict was created here. Our order issuing Letters Rogatory nowhere modified the discovery deadline, the deadlines for expert reports, or the deadline for dispositive motions. The direct conflict of *Vulcan* was never created, and plaintiffs' counsel has no basis for assuming otherwise.

### V. The Effectiveness of Sanctions Other Than Dismissal [5]

█ We are aware that sanctions other than exclusion of plaintiffs' witness are available to address the conduct of plaintiffs' counsel. Rule 16(f) of the Federal Rules of Civil Procedure suggests that, "in lieu of or in addition to any other sanction," we could require plaintiffs' counsel to pay the expenses incurred because of his noncompliance with the Scheduling Order. Under Rule 37(b)(2)(D) of the Federal Rules of Civil Procedure, specifically referenced by Rule 16(f) of the Federal Rules of Civil Procedure, we could hold plaintiffs' counsel in contempt of court. Moreover, in *Poulis*, while the Court of Appeals ultimately upheld dismissal of the action, it suggested that the preferred sanction would have been "to impose excess costs caused by such conduct directly upon the attorney, with an order that such costs are not to be passed on to the client, directly or indirectly." *Poulis*, 747 F.2d at 869.

We are mindful that these alternatives exist. However, we are not dealing here with a report that was just a few days late, or with an illness, death, or other family circumstance which would excuse an attorney's lack of punctuality. *Cf. Poulis*, 747 F.2d at 865. Nor have we heard anything about difficulties in obtaining an expert. Indeed, plaintiffs' counsel has advanced no compelling reason to excuse his conduct which has prejudiced defendants. Had he done so, the

---

**5.** The last *Poulis* factor—the meritoriousness of the claim or defense—does not require extensive discussion. In determining whether a claim is meritorious under *Poulis*, we only consider whether "the allegations of the pleadings, if established at trial, would support recovery by plaintiff." *Poulis*, 747 F.2d at 869–70. Under that standard, plaintiffs' claims are meritorious.

This does not necessarily mean that plaintiffs would prevail at trial. In her deposition, Ms. Sheppard described the shooting incident as follows:

I just remember everybody kept saying you had your finger on the trigger. I said I probably did. I didn't know. I felt stupid I felt like Oh, God. This is happening to me.

Plaintiffs' Answer to Defendants' Motion for Summary Judgment, Exh. B. The Firearms Training Unit of the Philadelphia Police Department has inspected the Glock 17 and found it to be operating properly without any defects. Defendant, Glock, Inc.'s Motion for Summary Judgment, Exh. D.

court would be more sympathetic. As it stands, his sole rationale for ignoring the March 1 deadline is that he "assumed" it was invalid. We will not endorse this cavalier approach to judicial directives. As the United States Supreme Court has noted:

the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).

We do not decide this matter lightly, recognizing that plaintiffs will be out of court. Nonetheless, we will not tolerate blatant disregard of deadlines in a Scheduling Order, compounded by a general pattern of dilatoriness, compounded by actual and apparent misrepresentations to opposing counsel and the court. As it now stands, defendants have not produced an expert report and the trial of this case, if allowed, would be delayed well beyond May. If we were to render a decision other than the one we reach today, the efforts of this and other trial judges to manage their dockets and move each case toward an expeditious disposition would be undermined. Moreover, the parties who have complied with the rules would be unfairly penalized. We trust that our decision today will avoid that result and will deter parties or their counsel from playing fast and loose with the rules and orders of court in the future.

### VI.

Accordingly, we will grant the motions of defendants Glock, Inc. and Glock, G. es. m.b.h. for summary judgment.

### ORDER

AND NOW, this 30th day of April, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant Glock, Inc. for summary judgment is GRANTED; and

(2) the motion of defendant Glock, G. es. m.b.h. for summary judgment is GRANTED.

Judgment is entered in favor of defendants Glock, Inc. and Glock G. es.m.b.h. and against plaintiffs Elizabeth Sheppard and Milton Sheppard.