**William BARNES, et al.**

v.

**THE AMERICAN TOBACCO COMPANY, INC., et al.**

**Civ. A. No. 96–5903.**

United States District Court,
E.D. Pennsylvania.

Aug. 22, 1997.

Stephen A. Sheller, Sheller, Ludwig & Badey, Philadelphia, PA, Thomas E. Mellon, Jr., Mellon, Webster & Mellon, Doylestown, PA, Arnold Levin, Jonathan Shub, Levin, Fishbein, Sedran & Berman, Sherrice A. Knisely, Sheller, Ludwig and Badey, Philadelphia, PA, Julia W. McInerny, Coale and Van Susteren, Washington, DC, Gary Robert Fine, Rodham and Fine, P.A., Fort Lauderdale, FL, Dianne M. Nast, Mary Ann M. Cooke, Roda and Nast, P.C., Lancaster, PA, Clifford E. Douglas, Evanston, IL, for Plaintiffs.

Edward F. Mannino, Wolf, Block, Schorr and Solis–Cohen, Peter S. Greenberg, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, Hugh R. Whiting, Jones, Day, Reavis & Pogue, Cleveland, OH, Morton F. Daller, Daller, Greenberg & Dietrich, Tracy Canuso Nugent, Daller, Greenberg and Dietrich, Ft. Washington, PA, Virginia Lynn Hogben, Wolf, Block, Schorr and ·Solis–Cohen, Judy L. Leone, Dechert, Price & Rhoads, Thomas Finarelli, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Robert C. Heim, Christine C. Levin, Ronni Ellen Fuchs, Dechert, Price & Rhoads, Howard M. Klein, William J. O'Brien, Conrad, O'Brien, Gellman & Rohn, P.C., Madeline M. Sherry, Stephen J. Imbriglia, Hecker, Brown, Sherry and Johnson, Joseph W. Fullem, Jr., Patrick W. Kittredge, Gary M. Marek, Kittredge, Donley, Elson, Fullem & Embick, Mark E. Squires, J. Kurt Straub, Abrahams, Lowenstein, Bushman & Kauffman, Philadelphia, PA, for Defendants.

Matthew L. Myers, National Ctr. for Tobacco Free Kids, Washington, DC, for the American Heart Association, the American Cancer Society, the American Lung Association, Respondents.

## MEMORANDUM

NEWCOMER, District Judge.

Presently before this Court are plaintiffs' Renewed Motion for Certification of Medical Monitoring Class Pursuant to Fed.R.Civ.P. 23(b)(2), and defendants' response thereto, and plaintiffs' reply thereto, and defendants' sur reply thereto, and the plaintiffs' response to defendants' sur reply thereto, and the various exhibits in support of the aforementioned. For the following reasons, the Court grants plaintiffs' motion.

### I. Introduction

On June 3, 1997, this Court entered an order and opinion in which plaintiffs' motion for class certification was denied. *Arch v. American Tobacco Co.*, 175 F.R.D. 469 (E.D.Pa.1997). Plaintiffs' motion for class certification sought certification of the First Amended Complaint which contained the following causes of action: (1) medical monitoring; (2) intentional exposure to a hazardous substance; (3) negligence; and (4) strict products liability. Count five of plaintiffs' First Amended Complaint averred that defendants acted in concert or pursuant to a common design.

Plaintiffs sought certification of the following class under the First Amended Complaint:

All current residents of Pennsylvania who are cigarette smokers as of December 1, 1996, and who began smoking before age 19, while they were residents of Pennsylvania.

Plaintiffs argued that the general requirements of Fed.R.Civ.P. 23(a)(1)–(4) were satisfied and that class certification was proper under Fed.R.Civ.P. 23(b)(3) in the first instance. In addition, plaintiffs contended that their medical monitoring claim could be properly certified under Fed.R.Civ.P. 23(b)(2). Alternatively, plaintiffs sought issue certification under Fed.R.Civ.P. 23(c)(4).

Plaintiffs' motion for certification was denied. Plaintiffs' claims were found not to be

certifiable under Rule 23(b)(3) because plaintiffs could not satisfy the superiority and predominance requirements. Additionally, plaintiffs' request for certification of their medical monitoring claim was denied because the majority of relief sought by plaintiffs was predominantly compensatory as opposed to equitable. Finally, the Court denied issue certification under Rule 23(c)(4).

Subsequent to the Court's June 3, 1997 order and opinion, plaintiffs filed a motion for leave to file a Second Amended Complaint, along with a renewed motion for class certification. Plaintiffs' Second Amended Complaint, which plaintiffs were granted leave to file, is significantly different from plaintiffs prior two complaints in this action. In their Second Amended Complaint, plaintiffs [1] maintain only one claim against the defendants [2]—a claim for medical monitoring. Plaintiffs have discarded their claims sounding in negligence, strict products liability and intentional exposure to a hazardous substance.

In support of their medical monitoring claim, plaintiffs set forth the following facts in their Second Amended Complaint. Plaintiffs allege that defendants manufacture, promote and sell cigarettes. Defendants' earnings on cigarettes sold throughout the United States allegedly exceeded six billion dollars this past year alone, on gross sales of forty-five billion dollars. According to the Pennsylvania Department of Health, more than 22.6 billion cigarettes were sold in Pennsylvania during the fiscal year July 1995 through June 1996.

Plaintiffs allege that cigarettes contain hazardous substances that cause serious and often fatal diseases of the throat, lungs, and heart, as well as the cardiovascular and pulmonary systems generally, and cause still-births and neonatal deaths of babies whose mothers smoke. The hazardous substances include, *inter alia*, nicotine, carbon monoxide, nitrosamine, formaldehyde, formic acid, acetaldehyde, ammonia, benzene, hydrogen cyanide, and "tar," which are all highly dangerous substances.

Plaintiffs maintain that defendants, acting in concert or pursuant to a common design, have engaged in a wide range of conduct for which they should be held liable to plaintiffs. Defendants allegedly have known of the relationship between cigarettes and disease but have concealed their research, publicly denied the relationship between cigarettes and disease, and continue to aggressively promote and sell cigarettes. In so doing, plaintiffs contend that defendants have engaged in this conduct not only with willful, wanton and reckless disregard for the health of those who use their products, "but have intentionally and deliberately consigned millions of users to disease and death, for no reason other than to maximize [their] profits." (Second Amended Compl. ¶ 12). Further, it is alleged that these defendants have known for many years of ways to make safer cigarettes but have intentionally chosen not to do so.

Defendants have also purportedly known for many years that nicotine is addictive but have publicly denied both the fact that nicotine is addictive and their knowledge of this fact. During the same time that defendants have publicly denied the addictive nature of nicotine, it is alleged that defendants have intentionally controlled the level of nicotine and other toxic substances in the cigarettes in order to preserve the dependence of smokers on cigarettes. Plaintiffs aver that defendants have utilized additives such as ammonia, as well as designs for which de-

1. The plaintiffs named in the Second Amended Complaint are William Barnes, Ciaran McNally, Catherine Potts, Norma Rodweller, Barbara Salzman and Edward J. Slivak. Steven Arch was granted leave to withdraw from this action and his claims were dismissed without prejudice.

2. The defendants are The American Tobacco Company, Inc., R.J. Reynolds Tobacco Company, RJR Nabisco, Inc., Brown & Williamson Tobacco Corporation, Philip Morris, Inc., Philip Morris Companies, Inc., Lorillard Tobacco Company, Inc., Lorillard, Inc., United States Tobacco Company, The Tobacco Institute, Inc., The Council for Tobacco Research–U.S.A., Inc., Liggett Group, Inc., Liggett & Myers, Inc. and Brooke Group, Ltd. Pursuant to the respective parties' stipulations, American Brands, Inc., Batus, Inc., Batus Holdings, Inc., Loews Corporation and UST, Inc. have been dismissed from this action without prejudice. In addition, B.A.T. Industries p.l.c. was dismissed for lack of personal jurisdiction by Order of this Court dated June 21, 1997.

fendants have sought patents, to make cigarettes a "package" for the delivery of nicotine. During this same period of time, plaintiffs allege that defendants have also intentionally avoided researching or developing cigarettes that would not cause dependence or addiction in those who use them.

In order to preserve and increase their sales of cigarettes, and despite their knowledge of the diseases and harm that cigarettes cause, it is alleged that defendants have spent millions of dollars each year in advertising and promoting cigarettes and have geared their efforts particularly to teenagers and children through such efforts as the "Joe Camel" advertising campaign because defendants have allegedly known that unless a person begins smoking before the age of twenty, the person is unlikely to ever begin.

Plaintiffs further allege that in their efforts to conceal the health hazards of smoking and the addictive nature of nicotine, defendants have testified falsely under oath before the United States Congress, provided false explanations to customers and governmental entities about the health hazards of tobacco and the harmful quantities of nicotine, concealed their secret research and testing on the dangers of cigarette smoking, concealed their deliberate manipulation of nicotine levels of cigarettes, required employees, under threat of severe legal sanctions, to keep secret all information that they have learned through their employment about the dangers of cigarette smoking, and concealed documents through devices such as the unwarranted invocation of the attorney client privilege.

In addition, plaintiffs claim that defendants have continued to make false claims to the public, governmental agencies and the United States Congress that they have been making their products as safe as feasible. Plaintiffs assert that these claims are false because defendants allegedly have had the ability, for some time now, to make safer cigarettes by removing hazardous substances from them such as nitrosamine, ammonia, benzene products and others, yet defendants have failed and intentionally refused to remove these hazardous substances.

Based on the conduct of defendants, plaintiffs contend that defendants are liable to them under their medical monitoring claim. Plaintiffs seek the following relief: (1) certifying this action as a class action pursuant to Fed.R.Civ.P. 23(a) and (b)(2); (2) establishing a Court-supervised program, to be funded by defendants, through which the class members would undergo periodical medical examinations in order to promote the early detection of diseases caused by smoking; and (3) awarding the costs of this suit and such other relief as the Court deems just and proper.

Plaintiffs seek certification of the following class under the Second Amended Complaint:

> All current residents of Pennsylvania who are cigarette smokers as of December 1, 1996, and who began smoking before age 19, while they were residents of Pennsylvania.

Plaintiffs argue that the general requirements of Fed.R.Civ.P. 23(a)(1)–(4) are satisfied and that class certification is proper under Fed.R.Civ.P. 23(b)(2). Defendants oppose such certification on the grounds that named plaintiffs are inadequate class representatives and that the existence of individual issues make litigating this case as a class action impossible.

*II. Discussion*

Federal Rule of Civil Procedure 23(c)(1) provides that class certification shall be determined "as soon as practicable after the commencement" of the action. Fed. R.Civ.P. 23(c)(1). A determination of class certification does not focus on whether plaintiffs have stated a cause of action or will prevail on the merits but rather is limited exclusively to whether the requirements of Rule 23 have been satisfied. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974); *Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 252 (3d Cir.1975): *Sala v. National R.R. Passenger Corp.,* 120 F.R.D. 494, 495 (E.D.Pa.1988). This determination is vested in the sound discretion of the trial court. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 2202, 68 L.Ed.2d 693 (1981); *Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 471–72 (5th

Cir.1986). Since the court may amend an order granting class certification, *In re School Asbestos Litigation,* 789 F.2d 996, 1011 (3d Cir.1986), in a close case the court should rule in favor of class certification. *Kahan v. Rosenstiel,* 424 F.2d 161, 169 (3d Cir.1970).

To obtain class action certification, plaintiffs must establish that all four requisites of Rule 23(a) and that at least one subdivision of Rule 23(b)(2) are satisfied. *See Wetzel,* 508 F.2d 239.

### A. Rule 23(a) Requirements

Rule 23(a) provides that:

One or more members of the class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)(1)–(4).

The United States Court of Appeals for the Third Circuit has succinctly explained the purposes for which Rule 23(a) was created: "The requirements of Rule 23(a) are meant to assure both that class action treatment is necessary and efficient and that it is fair to the absentees under the particular circumstances." *Baby Neal v. Casey,* 43 F.3d 48, 55 (3d Cir.1994). The numerosity requirement addresses the concern of necessity, and the final three requirements are applied in order to determine "whether the class action can be maintained in a fair and efficient manner." *Id.*

With respect to the Rule 23(a) requirements, plaintiffs simply argue that this Court has previously determined in its opinion of June 3, 1997 that these requirements have been satisfied. Indeed, plaintiffs contend that the findings in the opinion of June 3, 1997 as to Rule 23(a) are the "law of the case" as to the issue *sub judice.* Defendants do not argue that the requirements of numerosity, typicality and commonality have

not been satisfied. In light of the parties' positions, and relying on and incorporating the reasoning from the order and opinion of June 3, 1997, the Court finds that the threshold requirements of numerosity, commonality and typicality have been satisfied for the purposes of the instant motion for class certification.

Although defendants do not contest numerosity, commonality and typicality, defendants do contend that plaintiffs cannot establish adequacy of representation. Specifically, defendants claim that the named plaintiffs are not adequate class representatives because (1) they have split their causes of action and (2) they may have failed to make a knowing and voluntary amendment. Although defendants' arguments are facially appealing, upon closer review, the Court finds such arguments to be specious.

Pennsylvania law prohibits splitting a single claim into multiple legal actions. *Kessler v. Old Guard Mut. Ins. Co.,* 391 Pa.Super. 175, 182–83, 570 A.2d 569, 573 (1990); *Consolidation Coal Co. v. District 5, United Mine Workers of America,* 336 Pa.Super. 354, 363, 485 A.2d 1118, 1122 (1984). In addition, failure to join in one action all causes of action which arise from the same transaction or occurrence may result in the waiver of the unmade claims. *Hineline v. Stroudsburg Elec. Supply Co., Inc.,* 402 Pa.Super. 178, 181, 586 A.2d 455, 456, *app. denied,* 528 Pa. 630, 598 A.2d 284 (1991); Pa.R.Civ.P. 1020(d)(1), (4).

Applying these legal principles, defendants contend that named plaintiffs, with their amendment to the First Amended Complaint, have abandoned many of the legal theories that they brought in their First Amended Complaint. In so doing, defendants argue that the named plaintiffs have patently demonstrated themselves to be inadequate class representatives because they risk waiving potential claims of other class members. Specifically, defendants argue that under the First Amended Complaint, the plaintiffs represented that each and every class member has a present right to treatment and compensatory and punitive damages for the alleged injury of addiction. Defendants contend that plaintiffs have jetti-

soned that claim and are asking the Court to certify a class for medical monitoring, even if such certification puts at risk the future recovery by class members of treatment for their alleged addiction or the recovery of significant money damages—estimated by plaintiffs to be worth $700,000 for each class member. Defendants assert that plaintiffs should not be permitted to so disregard class members' interests—especially under Rule 23(b)(2), which does not permit class members the opportunity to opt out and control their own litigation strategies.

Although defendants' argument is facially appealing, the Court finds that named plaintiffs cannot waive or abandon the potential claims of class members. Based on the posture of this case, plaintiffs cannot logically "split" any causes of action belonging to the absent class members. This Court's order and opinion of June 3, 1997 held that none of the claims that defendants allege are being presently split can be maintained on a class-wide basis. Thus, no other claims can be split or waived on behalf of the class if the individual named plaintiffs withdraw the claims on behalf of themselves individually. An individual plaintiff is always free to withdraw his or her own claims; the only issue is whether this conduct prejudices the class.

The situation at bar is roughly analogous to a securities fraud litigation. In securities fraud litigation, the courts often certify the federal claim (such as Section 10(b)(5)) for class action treatment, but decline to certify a companion state law claim for fraud, on the grounds that individual reliance precludes certification on the state law claim. Hence, the status of the action is that while the federal claim is certified, the class representative's state claim is left as an individual, non-class claim. If the class representative thereafter dismisses his or her individual state claim, it cannot prejudice the class members if they seek to pursue their own individual state claims. The state court in which these individuals pursued their fraud claims could not find that the state law claim was waived because it could not have been brought in the prior federal class action.

In this case, the Court has already determined that the absent class members cannot bring in this putative class action those claims which have been omitted from the Second Amended Complaint because these claims are not suitable for class action treatment. Consequently, there cannot be any "splitting" or "waiver" by these absent class members: there is no other cause of action they can bring, or could have brought, in this action, except possibly the medical monitoring claim set forth in the Second Amended Complaint. The Court thus rejects defendants' argument that named plaintiffs are inadequate class representatives for waiving or abandoning the class members' claims.

■ The Court also rejects defendants' argument that plaintiffs are inadequate class representatives for failing to make a knowing and voluntary amendment of their complaint. In making this argument, defendants quote snippets of deposition testimony. In particular, defendants cite to the testimony of plaintiff Norma Rodweller to support their position that plaintiffs' amendment may not have been voluntarily or knowingly undertaken. Based mainly on the snippets from Ms. Rodweller's deposition testimony, defendants argue that "it is far from clear that the class representatives knowingly and voluntarily agreed to limit their claims." (Defs.' Opp. Pls.' Renewed Mot. Class Certification at 18).

Upon closer review of the named plaintiffs' deposition testimony, the Court finds that the named plaintiffs have made a knowing and voluntary amendment. If the Court only reviewed the snippets of testimony provided by defendants, it may have concluded that one of the named plaintiffs, namely Ms. Rodweller, did not make a knowing and voluntary amendment of her claims. However, after reviewing all relevant portions of the deposition testimony, it becomes clear that the named plaintiffs made a knowing and voluntary amendment of their claims.

To be sure, the various class representatives articulated the decision to amend the complaint with various degrees of legal sophistication. However, the applicable case law demonstrates that the class representative's complete understanding of the legal basis for the claims is not required by Rule 23. *In re Telectronics Pacing Systems, Inc.,* 172 F.R.D. 271, 282 (S.D.Ohio 1997) (citing

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 86 S.Ct. 845, 847–48, 15 L.Ed.2d 807 (1966)) (reversing dismissal of class claims where plaintiff "did not understand the complaint at all, . . . could not explain the statements made in the complaint [and] . . . had a very small degree of knowledge as to what the lawsuit was about. . . ."). The court in *In re Telectronics*, further recognized:

> [I]t is unrealistic to require a class action representative to have an in-depth grasp of the legal theories of recovery behind his or her claim. It is more important that the representative actively seeks vindication of his or her rights and engages competent counsel to prosecute the claims.

*Id.* at 282–83 (citation omitted).

Likewise, in this case, it would be unrealistic for this Court to require the named plaintiffs to have an in-depth understanding as to the legal theories behind their claim. If this standard was applied under Rule 23(a)(4), courts would be hard-pressed to find any plaintiff who would qualify as an adequate representative. In lieu of this unrealistic standard, courts have required the class representatives to actively seek vindication of his or her rights and engage competent counsel to prosecute the claims. In this case, named plaintiffs have actively sought vindication of their rights on a class-wide basis and have engaged competent counsel to litigate their claims. Thus, the Court rejects defendants' argument that named plaintiffs are not adequate class representatives.

Disposing of defendants' challenge to adequacy, the Court finds that plaintiffs have demonstrated that the threshold requisites of Rule 23(a)(1)–(4) have been satisfied. Clearing the Rule 23(a) hurdle, plaintiffs must demonstrate that its proposed class satisfies Rule 23(b)(2).

### B. Rule 23(b)(2)

Plaintiffs contend that their medical monitoring claim is appropriate for class certification under Rule 23(b)(2). Defendants rejoin that Rule 23(b)(2) certification is not appropriate in this case because the liability phase of plaintiffs' medical monitoring claim raises so many individualized issues that class action treatment in this case would be unmanageable. To resolve the parties' dispute and to determine whether the Court may certify plaintiffs' medical monitoring claim, the Court must perforce decide what is the proper standard under Rule 23(b)(2).

As a necessary and logical beginning point, the Court turns to the actual language of Rule 23(b)(2). Rule 23(b)(2) provides that:

> b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> * * *
>
> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). Thus, the clear language of Rule 23(b)(2) dictates that a case may be maintained as a class action only if (1) the prerequisites of Rule 23(a) are satisfied and (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thus making appropriate final injunctive relief with respect to the class as a whole. This second part actually itself has two parts: (i) the action or inaction of the party opposing the class must affect the entire class seeking relief and (ii) injunctive or declaratory relief must be appropriate for the whole class.

In this case, the Court has already determined that the prerequisites of subdivision (a) have been satisfied. In addition, the Court has already held that the medical monitoring program requested by plaintiffs constitutes appropriate injunctive relief:

> Plaintiffs seek the establishment of a court-supervised program through which the class members would undergo periodic medical examinations in order to promote the early detection of diseases caused by smoking. This portion of plaintiffs' request is the paradigmatic request for injunctive relief under a medical monitoring claim.

*Arch*, 175 F.R.D. at 484.

Plaintiffs' revamped medical monitoring claim seeks "the establishment of a program

through which the class members would undergo periodical medical examinations in order to promote the early detection of diseases caused by smoking."[3] (Pls.' Second Amended Compl. ¶ 8). This program, of course, would be court-supervised.[4] Additionally, and most importantly, plaintiffs no longer seek treatment under this program; the program is strictly limited to the types of relief that would qualify as injunctive in nature. Thus, plaintiffs' claim cannot be characterized as seeking predominantly compensatory damages. Based on the nature of the medical monitoring program requested by plaintiffs, the Court finds that plaintiffs have requested a medical monitoring program which would constitute appropriate injunctive relief if ordered. This finding is consistent with the Court's prior opinion and with the opinions of other courts. *Arch,* 175 F.R.D. at 482–84; *see also German v. Federal Home Loan Mortgage Corp.,* 885 F.Supp. 537 (S.D.N.Y.1995); *Day v. NLO, Inc.,* 144 F.R.D. 330 (S.D.Ohio 1992), *vacated on other grounds, In re NLO, Inc.,* 5 F.3d 154 (6th Cir.1993); *Cook v. Rockwell Int'l Corp.,* 778 F.Supp. 512 (D.Colo.1991); *Yslava v. Hughes Aircraft Co.,* 845 F.Supp. 705, 713 (D.Ariz. 1993). In sum, the Court finds that the injunctive relief requested—medical monitoring for latent diseases—is appropriate with respect to the class as a whole.

The final requirement under Rule 23(b)(2) requires the named plaintiffs to demonstrate that defendants have acted or refused to act on grounds generally applicable to the class,

*i.e.,* that the action or inaction of the party opposing the class must affect the entire class seeking relief. Fed.R.Civ.P. 23(b)(2). Although defendants do not explicitly argue that plaintiffs have not satisfied this requirement, a thorough examination of defendants' arguments indicate that defendants implicitly contend that plaintiffs cannot satisfy this requirement of Rule 23(b)(2). Defendants argue that Rule 23(b)(2) certification is not proper here because the proposed class is not cohesive in nature. Defendants contend that the individual liability issues and manageability problems which are implicated by the facts of this case demonstrate that the proposed class is not cohesive in nature, and thus not eligible for certification under Rule 23(b)(2).

In response, plaintiffs first argue that defendants have attempted to improperly conflate Rule 23(b)(3)'s "predominance" requirement with Rule 23(b)(2)'s requirement that the relief be injunctive in nature. This particular argument by plaintiffs is lacking in merit. Nowhere in defendants' submissions do the defendants argue that plaintiffs' case cannot be certified under Rule 23(b)(2) because individual issues predominate over common issues. Rather, defendants merely argue that plaintiffs cannot satisfy the requirements of Rule 23(b)(2) because the proposed class is not cohesive and is beset with individual liability issues and manageability problems. Thus, the Court rejects plaintiffs' argument that defendants improperly con-

3. Plaintiffs' reply brief contains the Supplemental Declaration of David Burns, M.D., which specifically details the medical monitoring program requested by plaintiffs. Defendants ask this Court not to consider this affidavit because it is untimely, improperly sets forth legal conclusions, and does nothing to advance plaintiffs' class certification argument. The Court rejects these arguments. To begin, the Court will consider the supplemental declaration because defendants cannot demonstrate any prejudice. Defendants do not claim that their experts will be prejudiced in preparing for trial by having Dr. Burns' supplemental declaration supplied on July 30, 1997. Additionally, defendants were able to take the deposition of Dr. Burns on August 6, 1997, where they had the opportunity to question him about this supplemental report. Because defendants cannot demonstrate that they will suffer any prejudice by this Court's consideration of Dr. Burns' declaration or that plaintiffs somehow

acted in bad faith, the Court will consider Dr. Burns' supplemental declaration.

The Court also rejects defendants' argument that Dr. Burns is expressing a "legal conclusion" in his declaration. In his declaration, Dr. Burns merely states medical conclusions which are within his purview as a medical expert. The mere fact that a medical standard is set forth in a judicial opinion does not make it a legal conclusion.

With respect to defendants' final argument that Dr. Burns' declaration does not further plaintiffs' position, the Court will entertain this issue when, and if, it arises.

4. Plaintiffs reasonably suggest that pursuant to Fed.R.Civ.P. 53, the Court may appoint a special master to oversee the medical monitoring program, and report to the Court, if the Court deems that an appropriate procedure.

flate Rule 23(b)(3)'s predominance requirement with the requirements of Rule 23(b)(2).

Instead of concluding that defendants have improperly characterized Rule 23(b)(2)'s standard, the Court finds that defendants have properly identified and addressed issues which are inherently part of Rule 23(b)(2)'s standard. In *Wetzel*, the Third Circuit emphasized that the essential characteristic of a 23(b)(2) class is that it is "cohesive as to those claims tried in the class action." *Wetzel*, 508 F.2d at 248. "This homogeneity requirement is a natural consequence of the (b)(2) condition that the defendant 'has acted or refused to act on grounds generally applicable to the class....'" *Santiago v. City of Philadelphia*, 72 F.R.D. 619, 627 (E.D.Pa. 1976). Thus, when a court determines whether the defendant "has acted or refused to act on grounds generally applicable to the class," the court is perforce examining whether the class is cohesive in nature. It is because of the cohesive or homogeneous nature of a (b)(2) class that "Rule 23(c)(3)[5] contemplates that all members of the class will be bound." *Wetzel*, 508 F.2d at 249 (citation omitted). "Any resultant unfairness to the members of a [(b)(2)] class is thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation." *Id.*

To ensure that (b)(2) classes are cohesive in nature, the Third Circuit has explicitly "committed to the district court the discretion to deny certification in Rule 23(b)(2) cases in the presence of 'disparate factual circumstances.'" *Geraghty v. United States Parole Commission*, 719 F.2d 1199, 1205 (3d Cir.1983) (citing *Carter v. Butz*, 479 F.2d 1084, 1089 (3d Cir.1973)). In *Santiago*, the court held that "court[s] should be more hesitant in accepting a (b)(2) suit which contains significant individual issues than it would un-

der subsection 23(b)(3)." *Santiago*, 72 F.R.D. at 628; *see also Society for Individual Rights, Inc. v. Hampton*, 528 F.2d 905, 906, *aff'd in part*, 528 F.2d 905 (9th Cir. 1975); *Rice v. City of Philadelphia*, 66 F.R.D. 17, 20 (E.D.Pa.1974) (holding that a case should not proceed as a (b)(2) action where "virtually all of the issues would have to be litigated individually in order to determine whether a particular alleged class member was entitled to any damages at all").

The *Santiago* court identified two reasons as to why courts must necessarily determine whether a putative (b)(2) class action implicates individual issues. First, the court noted that in a (b)(2) action, unnamed members, who are bound by the action without the opportunity to withdraw, "with valid individual claims may be prejudiced by a negative decision on the class action." Thus, the court must ensure that significant individual issues do not pervade the entire action because it would be highly unjust to bind absent class members to a negative decision where the class representatives' claims present strikingly different individual issues then the absent members. Second, the *Santiago* court noted that "the suit could become unmanageable and little value would be gained in proceeding as a class action ... if significant individual issues were to arise consistently." *Id.*

In light of this precedent, the language of Rule 23(b)(2) itself and the purposes behind Rule 23(b)(2), this Court concludes that it is required to examine whether the proposed class herein implicates too many individual issues and manageability problems to be certified under Rule 23(b)(2). This inquiry perforce flows from Rule 23(b)(3)'s essential characteristic that a (b)(2) class is cohesive in nature, and this cohesive/homogeneity requirement is "a natural consequence of the (b)(2) condition that the defendant 'has acted or refused to act on grounds generally applicable to the class.'" *Id.* at 627. Indeed, as a

---

**5.** Rule 23(c)(3) provides:

(3) The judgment in an action maintained as a class action under subdivision (b)(1) or (b)(2), whether or not favorable to the class, shall include and describe those whom the court finds to be members of the class. The judgment in an action maintained as a class action

under subdivision (b)(3), whether or not favorable to the class, shall include and specify or describe those to whom the notice provided in subdivision (c)(2) was directed, and who have not requested exclusion, and whom the court finds to be members of the class.

Fed.R.Civ.P. 23(c)(3).

matter of common sense, a court simply could not allow a case with significant individual issues to be certified under (b)(2). A (b)(2) class action with many individual issues would quickly degenerate into separate and distinct mini-trials, thus defeating the original purposes for class certification.

Thus, the question posited at this point in the Court's Rule 23(b)(2) analysis is whether this action raises so many individual issues that certification cannot be granted. In this regard, defendants set forth a host of individual issues that will purportedly arise in this action and thus necessarily preclude certification. Defendants argue that plaintiffs medical monitoring claim depends overwhelmingly on individual, not common issues, that their affirmative defenses raises numerous individual issues, and that plaintiffs' proposed Rule 23(b)(2) class is unmanageable and raises fairness and due process concerns. In response, plaintiffs set forth a number of arguments, including the arguments that defendants improperly argue the merits of the case in the context of a Rule 23 dispute, that the individual issues defendants refer to simply do not exist, and that even if the individual issues existed, they do not preclude (b)(2) certification.

Before this Court determines whether individual issues preclude certification under (b)(2), the Court notes that it is charged with the obligation to walk a thin line between the prohibition against examining the merits of the case and the obligation to examine the claims, defenses, relevant facts and applicable substantive law to make a determination of the certification issues presented herein. In *Eisen*, the Supreme Court explicitly warned that a court considering class certification may not conduct a preliminary inquiry into the merits of a suit. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152–53. Nonetheless, the Supreme Court has also instructed that a court may look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied. *See General Tel. Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982) ("Sometimes the issues are plain enough from the pleading ... and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (explaining that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action'"). Therefore, this Court must attempt to strike the fine balance between permissibly identifying the issues that the case will present for purposes of determining whether the requirements of Rule 23 have been met and impermissibly deciding those issues on the merits.

Defendants first argue that this action cannot be certified under (b)(2) because plaintiffs' medical monitoring claim depends on overwhelming individual issues, not common issues. Providing this Court with fortuitous guidance, the Pennsylvania Supreme Court recently held that a plaintiff bringing an individual monitoring claim must prove the following elements to prevail:

(1) exposure greater than normal background levels; (2) of a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contacting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles.

*Redland Soccer Club, Inc. v. Department of the Army*, 548 Pa. 178, 696 A.2d 137, 145–46 (1997). It is these elements that named plaintiffs will have to prove at trial in order to be entitled to relief under Pennsylvania's medical monitoring law.

Defendants argue that proof of these elements must proceed on an individual-by-individual basis, and thus this case cannot be tried on a class-wide basis. In advancing this argument, defendants rely heavily on this Court's June 3, 1997 opinion, arguing that this Court has already determined that proof of these elements must proceed on an individual-by-individual basis. Defendants

claim that this Court's prior findings are the law of the case, and as such, the parties are bound by these findings.

Although this Court did make certain findings in its June 3, 1997 opinion, the posture of this case has radically changed since that opinion. Since the June 3, 1997 opinion, plaintiffs have amended their complaint, dropping all claims except for their medical monitoring claim and amending their factual averments. Consequently, many of the Court's findings in its June 3, 1997 opinion simply would not apply to the determination of the instant dispute. Further, the Court's findings with respect to the individual issues that could arise under plaintiffs' medical monitoring claim were based solely on the facts, circumstances and arguments that were before the Court at that time. Indeed, in the Court's medical monitoring discussion, the Court simply stated that "it *appears* that these issues cannot be resolved on a class-wide basis." *Arch*, 175 F.R.D. at 490 (emphasis added). From this language, it is clear that this Court's opinion was based merely on the issues, facts and circumstances that were before it at the time of plaintiffs' first motion for class certification. Because of the changed circumstances of this case, which was brought on by plaintiffs' amendment and new evidence introduced to the Court, the Court concludes that it is not perforce bound by the prior findings in its June 3, 1997 opinion.[6] With this stated, the Courts turns to the issues *sub judice*.

Defendants primarily argue that element number six of plaintiffs' medical monitoring claim raises an issue that can only be proven on an individual-by-individual basis. Element six provides that a plaintiff asserting a medical monitoring claim must prove that "the prescribed monitoring regime is different from that normally recommended in the absence of the exposure." *Redland*, 696 A.2d at 146. This element mirrors the Third Circuit's requirement "whether a reasonable physician would prescribe for [the plaintiff] a monitoring regime different than the one that would have been prescribed in the ab-

sence of that particular exposure." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 788 n. 53 (3d Cir.1994). In this Court's June 3, 1997 opinion, the Court held that "it appear[ed] that [this] issue cannot be resolved on a class-wide basis." *Arch*, 175 F.R.D. at 490. Based on this prior finding, defendants argue that this Court has already determined that this prior issue would preclude certification of a (b)(2) class.

This finding, however, was made in the absence of any evidence by plaintiffs that this issue could be proved on a class-wide basis. Indeed, plaintiffs currently argue that this issue can be proved on a class-wide basis. Plaintiffs plan to offer the testimony of Dr. Burns that "it is not necessary to examine each plaintiffs' medical records in order to construct or administer this [medical monitoring] program." (Pls.' Reply Mem. at 10). Plaintiffs specifically argue that Dr. Burns will testify that if a smoker has other risk factors towards one of the diseases caused by smoking, then medical monitoring due to his smoking behavior will be all the more urgent. In sum, plaintiffs argue that the " 'reasonable physician' criteria will be the subject of expert proof at trial, on a class-wide basis." (Pls.' Resp. to Defs.' Sur Reply at 11).

In light of this class-wide evidence that purportedly will be presented at trial by plaintiffs, the Court cannot conclude that element six of plaintiffs' medical monitoring claim definitively raises significant individual issues that preclude certification under (b)(2). Although defendants' position—that plaintiffs cannot meet the "reasonable physician" criteria on a class-wide basis—may ultimately prove to be correct, the Court cannot properly decide this issue at this stage of the litigation. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152–53. In light of Dr. Burns' proposed testimony, the Court would be impermissibly examining the merits of plaintiffs' claim, if it decided at this point that plaintiffs cannot prove element six of their medical monitoring claim on a class-wide basis. Further, this issue will undoubtedly be visited at the dis-

---

6. This conclusion, however, does not preclude the Court from finding that certain issues should be treated as the law of the case. If the facts and circumstances upon which those findings were based remain unchanged, then the Court will surely give those findings their proper binding effect.

positive motion stage, and because a court's certification order can always be amended at any point in the litigation, *see Asbestos Litigation,* 789 F.2d at 1011, the Court can always vacate any certification order that may be granted if it finds, after ruling on the parties' dispositive motions, that individual issues actually preclude litigating this case on a class-wide basis.

Defendants further contend that plaintiffs' claim—that plaintiffs are addicted to cigarettes—raises a host of innumerable individual questions that preclude certification. In support of this contention, defendants point to this Court's June 3, 1997 opinion, wherein the Court quoted an expert who stated that "the assessment of addiction is an inherently individual inquiry." *Arch,* 175 F.R.D. at 487. Based on this observation, the Court found that this one individual issue—the assessment of addiction for each and every class member—precluded certification under Rule 23(b)(3). This reasoning clearly would apply to the present dispute and would preclude certification under (b)(2), if proving addiction was central to plaintiffs' current claim of medical monitoring.

However, plaintiffs now represent to the Court that under their Second Amended Complaint, addiction is only part of their case to the extent that "the addictive properties of nicotine are relevant . . . to show the design defect of the product." (Pls.' Resp. Defs.' Sur Reply at 9). Plaintiffs contend that they will introduce class-wide expert evidence to prove that when cigarettes are used exactly as they are intended to be used: (1) that the vast majority of those who use cigarettes become addicted and (2) that cigarettes are the leading cause in the nation of cardiovascular disease, lung cancer, and chronic obstructive pulmonary disease, due to the exposure of the throat, heart and lungs to tobacco smoke. Under plaintiffs' Second Amended Complaint, plaintiffs will only refer to the addictive properties of nicotine to the extent that they will attempt to prove that cigarettes are defectively designed due to the hazardous substances contained in cigarettes and the allegation that cigarettes addict the vast majority of smokers. Based on plaintiffs' present position, plaintiffs will not attempt to show, as they were attempting to do under the First Amended Complaint, that plaintiffs' smoking was involuntary because of addiction. Thus, defendants' argument— that the assessment of addiction would raise individual issues—is not implicated under the facts of the new complaint, and thus does not preclude certification.

Defendants further argue that the individual defenses raised by the facts of this case preclude certification under Rule 23(b)(2). Defendants specifically argue that the defenses of assumption of risk, statute of limitations, consent and comparative negligence raise individual issues which cannot be properly or fairly tried on a class-wide basis. In this Court's June 3, 1997 opinion, the Court held that affirmative defenses would implicate numerous issues which it appeared could only be tried on an individual-by-individual basis. However, in its June 3, 1997 opinion, the Court did not fully address plaintiffs' argument that these affirmative defenses were not available on the record. The Court did not address this argument because "even if the Court [had] ruled that defendants were barred from raising one or all of its affirmative defenses, there [were] numerous remaining individual issues which predominate[d] over common issues." *Arch,* 175 F.R.D. at 492. Thus, this question is still before the Court, but is now being raised in a Rule 23(b)(2) context as opposed to a Rule 23(b)(3) context.

A decision as to whether defendants can raise none, some or all of their proposed affirmative defenses will greatly further this Court's determination as to whether individual issues preclude certification under Rule 23(b)(2). If the Court were to find that some or all of these defenses could be raised by defendants, then the certification of plaintiffs' proposed class would be in grave jeopardy. On the other hand, this issue would be completely moot if the Court were to determine that based on the record of the case, defendants could not raise any of the proposed affirmative defenses.

However, to determine whether affirmative defenses are available in this case, the Court necessarily will have to inquire into and decide, at least partially, the merits of

this case. This the Court cannot do. *See Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152–53; *see also In re Revco Secs. Litig.*, 142 F.R.D. 659, 663–64 (N.D.Ohio 1992). It will only be after the Court addresses the issues of affirmative defenses in the dispositive motion context that the Court will be in a position to determine whether, upon the record of the case as construed in the light of plaintiffs' Second Amended Complaint, affirmative defenses will raise so many individual issues that certification is not possible. Thus, for the purposes of the instant motion, the Court will not consider whether the speculative individual issues raised by defendants' proposed affirmative defenses preclude (b)(2) certification.[7]

Based on the foregoing observations and analysis, the Court finds that defendants simply have not raised any concrete individual issues which would preclude certification of plaintiffs' proposed class under Rule 23(b)(2) at this point in time. Clearly, plaintiffs have identified many individual issues which may be implicated by the record of this case. Whether these individual issues exist or not, and thus preclude certification, cannot be determined at this stage in the litigation without impermissibly inquiring into the merits of plaintiffs' claim or defendants' affirmative defenses. Thus, defendants cannot properly argue that certification cannot be granted under subdivision (b)(2) because of the individual issues implicated by plaintiffs' Second Amended Complaint.

The Court also rejects defendants' argument that the proposed class cannot be certified because the class is unmanageable and defendants' constitutional rights would be prejudiced. The Third Circuit has stated that:

> Before a ruling is made denying class action certification on unmanageability grounds, hard data should be presented to the district court as to the actual difficulty or ease in ... managing the proceedings.

*Neely v. United States*, 546 F.2d 1059, 1071 (3d Cir.1976). Because defendants, at this time, have been unable to demonstrate the existence of any concrete individual issues that will be encountered in this litigation, defendants' manageability argument must fail because it was based on defendants being able to show that individual issues would make this litigation unmanageable.

The Court similarly finds defendants' constitutional rights argument unavailing. Defendants baldly claim that their Seventh Amendment rights will be violated if two juries are allowed to pass over the same issues twice. However, defendants do not specifically cite which issues, in light of plaintiffs' Second Amended Complaint, would be passed over twice by two separate juries. Thus, defendants have not presented this Court with any information upon which it can make a determination as to whether defendants' Seventh Amendment rights could be violated.

In addition, plaintiffs contend that defendants' constitutional rights will not be implicated in this case because this case will be tried to the Court, non-jury. As such, plaintiffs assert that the Court can phase or sequence the presentation of evidence, as frequently occurs in bench trial proceedings, thus avoiding any bifurcation problems. The Court will not decide at this point whether plaintiffs are correct in their position; instead, the Court merely sets forth plaintiffs' position to demonstrate that defendants' concerns are not supported by the record of the case and that defendants have not fully considered the procedural mechanisms which can be used at trial in this case to protect their rights in a class action.

Because defendants have been unable to demonstrate at this point in time that this case is beset with individual issues and manageability problems, the Court finds that plaintiffs' proposed case has the cohesive-

---

**7.** In their Second Amended Complaint, plaintiffs alternatively plead the negligence, intentional or strict liability standards in support of their medical monitoring claim. Referring to *Redland*, defendants argue that the intentional tort and strict liability theories are not proper bases for a medical monitoring claim. Despite this dispute, the Court will not consider at this stage in the litigation whether plaintiffs can state a claim for medical monitoring based on strict liability and intentional tort theories because such an examination would be an impermissible inquiry into the merits of plaintiffs' claim. *Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152–53.

ness to survive as a Rule 23(b)(2) class. Plaintiffs allege that defendants, acting in concert or pursuant to a common design, have engaged in tortious conduct directed toward the entire class as a whole. Whether or not plaintiffs can prove that defendants have acted in concert or pursuant to a common design is not a proper question to be resolved in a certification motion, rather this merit-based question must be reserved for later proceedings. *See Eisen*, 417 U.S. at 178, 94 S.Ct. at 2153. However, for the purposes of the instant issue *sub judice*, it is highly relevant that plaintiffs have alleged that defendants have acted in concert or pursuant to a common design. It is this allegation of concerted conduct that supports a finding that defendants have acted on grounds generally applicable to all members of plaintiffs' class. Although there may be individual variations with respect to each class members' relationship with the defendants, the common questions of defendants' liability, which are intimately connected with their concerted conduct, support a finding that defendants have acted on grounds generally applicable to all members of the proposed class.

Because the Court finds that all of the requirements of Rule 23(b)(2) have been satisfied, the following class is certified as a Rule 23(b)(2) class:

> All current residents of Pennsylvania who are cigarette smokers as of December 1, 1996, and who began smoking before age 19, while they were residents of Pennsylvania.

Because a court may amend an order granting class certification, *Asbestos Litigation*, 789 F.2d at 1011, in a close case the court should rule in favor of class certification. *Kahan*, 424 F.2d at 169. Thus, even though this case may present a close question as to whether this action should be certified under Rule 23(b)(2), the Court will grant certification because the Court may amend the certification order before a decision on the merits, if it becomes obvious after resolution of the parties' dispositive motions that too many individual issues are implicated by the facts of this case.

### III. Conclusion

Accordingly, for the foregoing reasons, plaintiffs' renewed motion for certification of medical monitoring class pursuant to Fed. R.Civ.P. 23(b)(2) is hereby granted.

An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of August, 1997, upon consideration of plaintiffs' Renewed Motion for Certification of Medical Monitoring Class Pursuant to Fed.R.Civ.P. 23(b)(2), and defendants' response thereto, and plaintiffs' reply thereto, and defendants' sur reply thereto, and plaintiffs' response to defendants' sur reply thereto, and the various exhibits in support of the aforementioned, it is hereby ORDERED that said Motion is GRANTED.

IT IS FURTHER ORDERED that the following class is CERTIFIED pursuant to Federal Rule of Civil Procedure 23(b)(2):

> All current residents of Pennsylvania who are cigarette smokers as of December 1, 1996, and who began smoking before age 19, while they were residents of Pennsylvania.

AND IT IS SO ORDERED.

### MEMORANDUM ON MOTION

Presently before this Court are Defendants' Motion for Certification of Class Certification Order of August 22, 1997, for Interlocutory Appeal and for a Stay of Proceedings Pursuant to 28 U.S.C. § 1292(b) or, in the Alternative, for Reconsideration of the August 22, 1997 Order, and plaintiffs' response thereto, and defendants' reply thereto. For the following reasons, the Court will deny defendants' Motion. Pursuant to Federal Rule of Civil Procedure 23(c)(1), the Court will decertify the class that had been previously certified by Order dated August 22, 1997, it appearing that this action cannot proceed on a class-wide basis.

### I. Introduction

By Memorandum and Order dated August 22, 1997, this Court certified this case as a

class action, pursuant to Federal Rule of Civil Procedure 23(b)(2), against thirteen defendants,[1] wherein named plaintiffs [2] seek the establishment of a medical monitoring program on behalf of over one million class members. Because named plaintiffs satisfied the threshold requirements of Rule 23(a)(1)–(4) and the requirements of Rule 23(b)(2), this Court certified the following class:

> All current residents of Pennsylvania who are cigarette smokers as of December 1, 1996, and who began smoking before age 19, while they were residents of Pennsylvania.

In the August 22, 1997 Order, this Court explained that the issue of class certification was a "close question." Specifically, the Court explained:

> Because a court may amend an order granting class certification, *Asbestos Litigation,* 789 F.2d at 1011, in a close case the court should rule in favor of class certification. *Kahan,* 424 F.2d at 169. Thus, even though this case may present a close question as to whether this action should be certified under Rule 23(b)(2), the Court will grant certification because the Court may amend the certification order before a decision on the merits, if it becomes obvious after resolution of the parties' dispositive motions that too many individual issues are implicated by the facts of this case.

*Barnes v. American Tobacco Co.,* 176 F.R.D. 474, 493 (E.D.Pa.1997). Even though the Court concluded that class certification presented a close question, the class was certified because, on the record before the Court at the time, plaintiffs had satisfied requirements of Rule 23.

Defendants presently move for certification of this Court's August 22, 1997 Order for interlocutory appeal and for a stay of proceedings pursuant to 28 U.S.C. § 1292(b) or, in the alternative, for reconsideration of the August 22, 1997 Order. Defendants contend that immediate interlocutory appeal is warranted in this case because the August 22, 1997 Order involves (1) a controlling question of law as to which there is a substantial ground for difference in opinion and (2) immediate appeal would "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

Defendants contend that this case involves several controlling questions of law as to which there is a substantial difference of opinion: (1) Did the Court, contrary to *Georgine v. Amchen Products, Inc.,* 83 F.3d 610 (3d Cir.1996) and other well-established precedents, certify a class without due consideration of the individual issue that pervade the case?; (2) Did the Court improperly interpret *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974) and impermissibly shift the burden of proof on class certification requirements to defendants?; (3) Did the Court's *Eisen* analysis and burden shifting result in the improper certification of this class action?; (4) Did the Court err in certifying an immature tort for class certification?

Defendants also maintain that interlocutory review of these questions will materially advance this litigation. Defendants claim that this Court and the parties presently face the daunting task of litigating dozens of issues implicating decades of conduct by at least six cigarette manufacturers and other defendants concerning hundreds of products. *See Arch v. American Tobacco Co., Inc.,* 175 F.R.D. at 488–89 (E.D.Pa.1997). If the

---

1. The defendants are The American Tobacco Company, Inc., R.J. Reynolds Tobacco Company, RJR Nabisco, Inc., Brown & Williamson Tobacco Corporation, Philip Morris, Inc., Philip Morris Companies, Inc., Lorillard Tobacco Company, Inc., Lorillard, Inc., United States Tobacco Company, The Tobacco Institute, Inc., The Council for Tobacco Research–U.S.A., Inc., Liggett Group, Inc., Liggett & Myers, Inc. and Brooke Group, Ltd. Pursuant to the respective parties' stipulations, American Brands, Inc., Batus, Inc., Batus Holdings, Inc., Loews Corporation and

UST, Inc. have been dismissed from this action without prejudice. In addition, B.A.T. Industries p.l.c. was dismissed for lack of personal jurisdiction.

2. The plaintiffs named in the Second Amended Complaint are William Barnes, Ciaran McNally, Catherine Potts, Norma Rodweller, Barbara Salzman and Edward J. Slivak. Steven Arch was granted leave to withdraw from this action and his claims were dismissed without prejudice.

Court has erred in certifying this class action, defendants argue that much time, effort and expense will be wasted before an appeal can be taken after final judgment. Defendants, thus, submit that interlocutory review will materially advance this litigation.

In their motion for reconsideration, defendants merely incorporate the same arguments that they advance in their motion for interlocutory appeal. Plaintiffs, of course, have filed a response, in which they claim that neither the motion for interlocutory appeal nor the motion for reconsideration should be granted. Plaintiffs argue that there simply exists no controlling question of law, only a difference of opinion. Further, plaintiffs submit that interlocutory review in this case will not materially advance this litigation in light of the fact that trial is only a few weeks away. With respect to the reconsideration motion, plaintiffs argue that such motion should be denied because defendants have not raised any grounds which are cognizable in a motion to reconsider.

The Court will address these issues below. In addition to disposing of defendants' motions, the Court will also consider, pursuant to Fed.R.Civ.P. 23(c)(1), whether this action can proceed as a class action in light of the evidentiary record and the issues which are now before the Court.

## II. Discussion

The Court will first address whether the August 22, 1997 Order should be certified for interlocutory appeal or whether defendants' alternative motion for reconsideration should be granted. The Court will then consider whether this case can proceed as a class action in light of individual issues that have been implicated by the evidentiary record presently before the Court.

### A. Interlocutory Appeal

■ Interlocutory review is only warranted under exceptional circumstances. Appellate review of a district court order is restricted to final decisions to prevent "the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequences, but a single controversy." *Eisen,* 417 U.S. at 170, 94

S.Ct. at 2149. The policy is clearly against punctuating ongoing litigation with serial appeals. *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 3082–83, 73 L.Ed.2d 754 (1982).

■ Interim review of class certification orders is even less appropriate, given the discretionary and conditional nature of Rule 23 decisions. For this reason, the Third Circuit has held that the district court's determination to permit a class action does not itself present a controlling question of law. *Link v. Mercedes–Benz of North Am., Inc.,* 550 F.2d 860, 862 (3d Cir.1977). Instead, the Third Circuit requires "special factors which take it outside the ambit of the general rule." *Id.* (quoting *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 756 (3d Cir.1974)). Accordingly, under § 1292(b), certification of orders granting class certification "is appropriate only in 'exceptional' cases." *Piazza v. Major League Baseball,* 836 F.Supp. 269, 270 (E.D.Pa.1993).

■ Not only must defendants prove that they are entitled to interlocutory review in light these principles, defendants must show the following: (1) the existence of a controlling question of law with respect to which there are substantial grounds for difference of opinion, and (2) that an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *see also Katz,* 496 F.2d at 755. The defendants, here, cannot meet their burden under § 1292(b).

Where the purported "controlling question of law" is simply a question of proper exercise of discretion, the Third Circuit has held that interim review is inappropriate. *See, e.g., Ungar v. Dunkin Donuts of Am., Inc.,* 531 F.2d 1211 (3d Cir.1976) ("a 'controlling question' does not exists when the sole issue is whether the factual complexity of the given case meet the class action requirements of Rule 23"). Here, defendants argue that the Court's class certification order should be certified for immediate appeal pursuant to § 1292(b) because of four purported controlling questions. Notwithstanding defendants' arguments to the contrary, the Court finds that the "questions of law" which defendants

enumerate are really nothing more than disagreements with the Court's application of Rule 23 to the particular facts of this case in exercising its discretion in certifying the class. In this Circuit, such disagreements do not constitute controlling issues of law under § 1292(b) and cannot be the basis for interlocutory appeal.

Under Rule 23(b)(2), two requirements must be met before a class can be certified: (1) the requirements of Rule 23(a) must be satisfied; and (2) defendants must have acted or refused to act on grounds generally inapplicable to the class and final injunctive relief must be appropriate. Fed.R.Civ.P. 23(a), (b)(2). In *Barnes* (the August 22, 1997 Order), this Court found that plaintiffs had met the requirements of numerosity, commonality, typicality and adequacy. *Barnes*, 176 F.R.D. at 492–93. The Court also determined in *Barnes* that defendants have acted or refused to act on grounds generally applicable to the class and that final injunctive relief was appropriate. *Id.* at 486–88. Thus, a fair review of this Court's previous Order demonstrates that this Court properly considered the relevant requirements under Rule 23.

Based on the record that was presented to the Court when it considered plaintiffs' renewed motion for class certification, the Court cannot find that it did not give "due consideration of the individual issues" that were involved in the case. A close review of the August 22, 1997 Order indicates that this Court carefully considered whether any individual issues existed on *the record at that time.* For example, at the time of this Court's August 22, 1997 Order, plaintiffs represented to this Court that "addiction" no longer played a role in this case to the extent that addiction would require an individual analysis. Moreover, plaintiffs pointed to certain conduct of defendants that would preclude defendants from raising affirmative defenses. Thus, the highly individual issues of affirmative defenses were not implicated at the time of this Court's August 22, 1997 Order. In sum, the Court concludes that it properly considered the individual issues that were implicated by the record of this case at the time of entry of the August 22, 1997 Order.

The Court also finds that it did not incorrectly interpret *Eisen* or improperly shift the burden of proof on the class certification requirements. While defendants offer a lengthy analysis discussing the meaning of *Eisen,* their reading of *Eisen* is not supported by *Eisen* itself or by any subsequent Supreme Court decision addressing it; *Eisen,* as written, remains controlling law. In both certification decisions in this case, the Court recognized that it must look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied. *Arch,* 175 F.R.D. at 485–86; *Barnes,* 176 F.R.D. at 489. The difference between the result in *Arch* and the result in *Barnes* had nothing to do with this Court's misinterpretation of *Eisen.* To the contrary, in light of plaintiffs' Second Amended Complaint and the record that existed before the Court at the time of its decision, the Court simply was not convinced that individual issues existed which would preclude certification. In other words, plaintiffs had met their burden of proving the elements of Rule 23, and demonstrating that no individual issues existed.

Defendants' burden-shifting argument is similarly unavailing. Defendants essentially say that the Court has lost its bearing in the three months that passed since the *Arch* decision. By focussing on "snippets" or "bits and scraps" from the Court's opinion, defendants suggest that the Court improperly shifted the burden of proof on class certification onto defendants, *i.e.,* that there was, in effect, a presumption in favor of certification, and that defendants had to show why the class should not be certified. This Court, however, engaged in no such activity.

In *Barnes,* the Court found that plaintiffs had met their burden, and that defendants had failed to rebut plaintiffs' showing regarding common issues and class-wide proof. The Court, in *Barnes,* first determined that plaintiffs had met the requirements of Rule 23. The Court then turned to defendants' argument that many individual issues existed that would preclude certification. At this point in the Court's analysis, the Court did

not require defendants to prove that these individual issues existed. Rather, a close review of *Barnes* demonstrates that the Court independently reviewed the record and simply concluded that individual issues would not preclude certification. If the Court used language in its opinion that made it appear as though it was requiring defendants to show that no individual issues existed, such language is directly contradicted by the Court's actual analysis. Accordingly, defendants' burden-shifting argument is in itself erroneous and provides no basis for interlocutory appeal.[3]

■ Finally, defendants cannot establish, as they must, that an interlocutory appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Courts within the Third Circuit have routinely held that where a case is ready for trial, an interlocutory appeal will only result in delay. *See Piazza*, 836 F.Supp. at 271. For instance, in *Piazza*, the court reached this conclusion where trial was to begin in less than five weeks. Here, where the trial is scheduled to begin in less than two weeks, the conclusion is self-evident.

Defendants have not satisfied § 1292(b)'s applicable standards. Defendants have failed to show how the Court's decision in *Barnes* is anything other than an appropriate exercise of discretion under Rule 23(b)(2) that comports with precedent. Second, with trial on the immediate horizon, the most expeditious course is to proceed forward, reserving all appeals for resolution thereafter. Interlocutory review will only result in substantial delay.

Because defendants have not established their right to interlocutory appeal, the Court will deny their motion seeking such relief. Having disposed of this issue, the Court will now address defendants' motion for reconsideration.

**3.** The Court also rejects defendants' argument that this Court erred in certifying an immature tort for class treatment. The immature tort doctrine is a doctrine which has been used to assess whether the superiority and/or predominance prongs of Rule 23(b)(3) have been satisfied; thus the immature tort theory is necessarily tied to Rule 23(b)(3). The immature tort doctrine sim-

## B. Motion for Reconsideration

■ The purpose of a motion for reconsideration, as is often stated, is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985). Reconsideration is granted only if defendants can demonstrate one of three grounds: (1) the availability of new evidence; (2) an intervening change in controlling law; or (3) the need to correct a clear error of law. *Smith v. City of Chester*, 155 F.R.D. 95, 96–97 (E.D.Pa.1994).

■ In the Third Circuit, a motion for reconsideration, even where purportedly grounded on the court's commission of clear error, is not to be used merely as an opportunity to reargue issues that the court has already analyzed and determined. *Waye v. First Citizen's National Bank*, 846 F.Supp. 310, 314 (M.D.Pa.1994). "[A] motion for reconsideration addresses only factual and legal matters that the Court may have overlooked.... It is improper on a motion for reconsideration to 'ask the Court to rethink what [it] had already thought through—rightly or wrongly.'" *Glendon Energy Co. v. Borough of Glendon*, 836 F.Supp. 1109, 1122 (E.D.Pa.1993) (citation omitted).

Applying this standard here, the Court finds that defendants are not entitled to reconsideration. As stated in Part II.A., defendants have failed to establish that this Court committed a manifest error of law in *Barnes*. In addition, defendants have not presented this Court with newly discovered evidence that would justify that this Court reconsider its August 22, 1997 Order. At its core, defendants' motion for reconsideration simply expresses defendants' disagreement with this Court's August 22, 1997 Order, and asks the Court to reconsider what is has already considered in its previous Order. As

ply is not applicable to this Court's Rule 23(b)(2) analysis; indeed, defendants did not raise the immature tort doctrine in the Rule 23(b)(2) context until the filing of this instant motion. To the extent that it may be applicable, the Court finds that the "immature" nature of plaintiffs' medical monitoring claim would not preclude certification.

defendants are aware, a motion cannot be used to reargue issues which have already been presented and rejected.

Because defendants do not advance arguments which are cognizable in a reconsideration context, the Court must deny defendants' alternative motion for reconsideration. Having disposed of defendants' motion in its entirety, the Court now turns to the issue of whether this Court should decertify plaintiffs' class pursuant to Fed.R.Civ.P. 23(c)(1).

### C. Rule 23(c)(1) Reconsideration

 Federal Rule of Civil Procedure 23(c)(1) provides, in part, that: "An order under this subdivision may be conditional and may be altered or amended before the decision on the merits." Fed.R.Civ.P. 23(c)(1). Under this Rule, trial courts are permitted to decertify, in whole or in part, any class that had been previously certified if the facts before the Court require such a result. *See Miera v. First Sec. Bank of Utah, N.A.,* 925 F.2d 1237, 1241–42 (10th Cir.1991) (holding that a trial court may decertify a class action pursuant to Rule 23(c)(1)). Indeed, district courts are required to reassess their class rulings regularly as the case develops. *Kuehner v. Heckler,* 778 F.2d 152, 163 (3d Cir.1985); *Richardson v. Byrd,* 709 F.2d 1016, 1019 (5th Cir.1983).

The Fifth Circuit has succinctly articulated the obligations of a district court under Rule 23:

Under Rule 23 the district court is charged with the duty of monitoring its class decisions in the light of the evidentiary development of the case. The district judge must define, redefine, subclass and decertify as appropriate in response to the progression of the case from assertion to facts. We recognize that these complex cases cannot be run from the tower of the appellate court given its distinct institutional role and that is has before it printed words rather than people.

*Id.* Federal district courts must constantly monitor the progress of the class action cases before them; it is our obligation and duty. A trial court must define, redefine, subclass and decertify the class action before it when the evidentiary development of a case re-quires such action. In this regard, the Court finds that, in light of the evidentiary development of the instant case, this Court must decertify the class which had been previously certified in this action.

By Memorandum and Order dated August 22, 1997, this Court certified a class in this action, pursuant to Federal Rule of Civil Procedure 23(b)(2), against thirteen defendants, wherein named plaintiffs seek the establishment of a medical monitoring program on behalf of over one million class members. The Court, however, explained that the issue of class certification was a "close question." Specifically, the Court explained:

Because a court may amend an order granting class certification, *Asbestos Litigation,* 789 F.2d at 1011, in a close case the court should rule in favor of class certification. *Kahan,* 424 F.2d at 169. Thus, even though this case may present a close question as to whether this action should be certified under Rule 23(b)(2), the Court will grant certification because the Court may amend the certification order before a decision on the merits, if it becomes obvious after resolution of the parties' dispositive motions that too many individual issues are implicated by the facts of this case.

*Barnes,* 176 F.R.D. at 493. Thus, in the August 22, 1997 Order, the Court specifically noted that it would eventually be required to revisit the certification issue at a later stage. Although the Court originally intended not to revisit this issue until after disposing of defendants' summary judgment motions, in light of the evidentiary record which has been produced at the summary judgment stage, the Court need not wait any longer to decide whether this action can continue on a class-wide basis.

 Indeed, reviewing the evidentiary record that is now before the Court, it is obvious that this action implicates far too many individual issues to proceed on a class-wide basis. Although this action has been certified under Rule 23(b)(2), it is well-established that a district court must still determine whether individual issues and manageability problems preclude certification. In

*Barnes,* this Court, in great detail, explained the relationship between individual issues and Rule 23(b)(2) certification:

> . . . In *Wetzel,* the Third Circuit emphasized that the essential characteristic of a 23(b)(2) class is that it is "cohesive as to those claims tried in the class action." *Wetzel,* 508 F.2d at 248. "This homogeneity requirement is a natural consequence of the (b)(2) condition that the defendant 'has acted or refused to act on grounds generally applicable to the class. . . .'" *Santiago v. City of Philadelphia,* 72 F.R.D. 619, 627 (E.D.Pa.1976). Thus, when a court determines whether the defendant "has acted or refused to act on grounds generally applicable to the class," the court is perforce examining whether the class is cohesive in nature. It is because of the cohesive or homogeneous nature of a (b)(2) class that "Rule 23(c)(3) contemplates that all members of the class will be bound." *Wetzel,* 508 F.2d at 249 (citation omitted). "Any resultant unfairness to the members of a [ (b)(2) ] class is thought to be outweighed by the purposes behind class actions: eliminating the possibility of repetitious litigation and providing small claimants with a means of obtaining redress for claims too small to justify individual litigation." *Id.*

To ensure that (b)(2) classes are cohesive in nature, the Third Circuit has explicitly "committed to the district court the discretion to deny certification in Rule 23(b)(2) cases in the presence of 'disparate factual circumstances.'" *Geraghty v. United States Parole Commission,* 719 F.2d 1199, 1205 (3d Cir.1983) (citing *Carter v. Butz,* 479 F.2d 1084, 1089 (3d Cir.1973)). In *Santiago,* the court held that "court[s] should be more hesitant in accepting a (b)(2) suit which contains significant individual issues than it would under subsection 23(b)(3)." *Santiago,* 72 F.R.D. at 628; *see also Society for Individual Rights, Inc. v. Hampton,* 528 F.2d 905, 906, *aff'd in part,* 528 F.2d 905 (9th Cir.1975); *Rice v. City of Philadelphia,* 66 F.R.D. 17, 20 (E.D.Pa.1974) (holding that a case should not proceed as a (b)(2) action where "virtually all of the issues would have to be litigated individually in order to determine whether a particular alleged class member was entitled to any damages at all").

The *Santiago* court identified two reasons as to why courts must necessarily determine whether a putative (b)(2) class action implicates individual issues. First, the court noted that in a (b)(2) action, unnamed members, who are bound by the action without the opportunity to withdraw, "with valid individual claims may be prejudiced by a negative decision on the class action." Thus, the court must ensure that significant individual issues do not pervade the entire action because it would be highly unjust to bind absent class members to a negative decision where the class representatives' claims present strikingly different individual issues then the absent members. Second, the *Santiago* court noted that "the suit could become unmanageable and little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently." *Id.*

In light of this precedent, the language of Rule 23(b)(2) itself and the purposes behind Rule 23(b)(2), this Court concludes that it is required to examine whether the proposed class herein implicates too many individual issues and manageability problems to be certified under Rule 23(b)(2). This inquiry perforce flows from Rule 23(b)(3)'s essential characteristic that a (b)(2) class is cohesive in nature, and this cohesive/homogeneity requirement is "a natural consequence of the (b)(2) condition that the defendant 'has acted or refused to act on grounds generally applicable to the class.'" *Id.* at 627. Indeed, as a matter of common sense, a court simply could not allow a case with significant individual issues to be certified under (b)(2). A (b)(2) class action with many individual issues would quickly degenerate into separate and distinct mini-trials, thus defeating the original purposes for class certification.

*Barnes,* 176 F.R.D. at 488 (footnotes omitted).

■ Although a case may be certified under Rule 23(b)(2), which does not contain a superiority or predominance requirement, certification under (b)(2) does not relieve a

court of its obligation to determine whether the existence of individual issues precludes certification. Indeed, as noted by many courts, a (b)(2) class should actually have more cohesiveness then a (b)(3) class. In this case, too many individual issues exist which prevent this case from proceeding as a class action.

To begin, the individual issue of addiction, which plaintiffs had previously represented as playing no part in this case, is still actually part of the present case. When compelled to discuss the substantive issues in the case on defendants' motion for summary judgment, plaintiffs primarily focussed on "addiction" and purported nicotine "manipulation." (Pls.' Br. Opp'n Dfs.' Summ. J. Mots. at 1, 18–19, 29–66, 75, 139 n. 38, 159). It is obvious from plaintiffs' own words that "addiction" remains a central part of their case. As was explained in *Arch*, whether or not an individual is addicted is a highly individualistic inquiry:

> Plaintiffs' own expert Dr. Burns recognizes that the assessment of addiction is an inherently individual inquiry. (Burns Dep. at 64, 268). Based on this statement, defendants argue that class certification under these circumstances would require a mini-hearing on the merits of each individual's case to determine injury. *See Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 403 (E.D.Pa.1995). Importantly, the Court finds that nowhere in plaintiffs' voluminous submissions do they actually refute that addiction is an inherently individual inquiry. Instead, plaintiffs offer a solution to this massive problem of proving addiction on an individual basis. Plaintiffs propose that once the general issue as to whether cigarettes can cause addiction is resolved, the issue as to whether each and every class member is addicted can be resolved by having them answer a questionnaire, consisting of six simple questions. Defendants rejoin that this questionnaire cannot by itself determine whether a person is nicotine dependent.

> The Court finds that even if the questionnaire were used to determine nicotine dependence, defendants would be permitted to cross-examine each and every class member as to their alleged dependence. Plaintiffs admittedly acknowledge that the plan they propose would be, at most, a *prima facie* indication of addiction. Plaintiffs' own experts concede that addiction is necessarily an individual inquiry. To refute plaintiffs' *prima facie* case, defendants would be permitted to cross-examine each individual about his specific choices, decisions and behavior, and defendants would be entitled to offer expert testimony about each person's specific circumstances and diagnosis. Based on this one individual issue, class certification under Rule 23(b)(3) is not appropriate because the cross-examination of each class member in a trial would be impossible.

*Arch*, 175 F.R.D. at 488 (footnotes omitted). As can be gleaned from this Court's analysis in *Arch*, the issue of addiction is a highly individual issue, which cannot be resolved on a class-wide basis.

Although plaintiffs had represented to this Court that they had substantially narrowed their theories of liability under the Second Amended Complaint, plaintiffs still advance the same theories that they asserted in their First Amended Complaint. Under plaintiffs' First Amended Complaint, plaintiffs asserted, among other claims, claims sounding in negligence, strict liability and intentional exposure to a hazardous substance. After plaintiffs filed their Second Amended Complaint, plaintiffs asserted only one claim—a claim for medical monitoring. Nonetheless, instead of completely dropping their claims for negligence, strict liability and intentional exposure to a hazardous substance, plaintiffs merely inserted these theories as the underlying theories of liability for their medical monitoring. Thus, these theories, with their attendant individual issues, are still in this case.

As this Court held in *Arch*, these theories of liability implicate various individual issues which cannot be resolved on a class-wide basis. Indeed, this Court noted that:

> To succeed on their products liability and negligence claims, plaintiffs will also have to prove "causation," which the Court finds is not capable of determination on a

class-wide basis in this case. Resolution of the "general causation" question of whether cigarettes are capable of being addictive "is not common under Rule 23(a)(2)." *Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 677 (N.D.Ohio 1995). Unless it is proven that cigarettes always cause or never cause addiction, "the resolution of the general causation question accomplishes nothing for any individual plaintiff." *Id.; see also In re "Agent Orange" Product Liability Litigation,* 818 F.2d 145, 164 (2d Cir.1987) (the "relevant question is not whether Agent Orange has the capacity to cause harm," but rather the "highly individualistic" question of whether "it did cause harm and to whom").

As explained previously, plaintiffs do not actually refute the proposition that a finding of addiction entails an individualistic inquiry; instead, they suggest that this individualistic inquiry can be proven by a questionnaire, consisting of six questions. The use, however, of this questionnaire will not obviate the need for cross-examination by defendants as demonstrated above. If plaintiffs are unable to prove that cigarettes always cause addiction (a contention that plaintiffs do not advance), the Court is faced with the impossible reality of trying a case in which one million persons would have to be cross-examined as to causation.

Plaintiffs cannot satisfy the "causation" element of these claims by proving that all cigarettes can potentially cause the user to become addicted. This is a general causation issue. The resolution of this "general causation question" would accomplish nothing for any of the individual plaintiffs. *See Kurczi,* 160 F.R.D. at 677. Indeed, the jury would still be required to determine for each class member whether he or she is addicted to cigarettes, and, if so, whether defendants (and which defendant) caused that addiction. With respect to causation, the Court finds that this issue is highly individualized and does not lend itself to Rule 23(b)(2) certification.

To establish their strict products liability claim, plaintiffs will be required to prove a defect in defendants' products. This inquiry is also highly individualized. Defendants manufactured hundreds of different types of cigarettes over the years and have even made changes within each brand. In their First Amended Complaint, plaintiffs allege that defendants' cigarettes contain numerous "hazardous substances," and that defendants have "intentionally manipulated" the levels of nicotine and "other toxic substances." (First Amended Compl. ¶¶ 10, 13). The different types of unspecified defects—which may be present in some cigarettes but not in others—make proof of a defect a non-common issue. As a result, each class member will have to establish that the type of cigarettes he or she smoked contained a defect at the time he or she smoked them. *See In re American Medical Systems,* 75 F.3d at 1081 (commonality not established where the plaintiffs' "claims of strict liability ... will differ upon the model and the year it was issued"). The need to prove a defect in defendants' products raises another individual issue.

Plaintiffs claim that they can prove a common defect on a class-wide basis for all of defendants' products. Plaintiffs argue that all of defendants' products are inherently defective because they contain sufficient levels of nicotine to cause addiction and other hazardous substances. Thus, plaintiffs will attempt to establish a common defect by showing that this combination exists in all of the cigarettes sold by defendants. Nonetheless, the possibility that plaintiffs' common defect theory will fail and that the class will be splintered into various subclasses—creating manageability concerns—"weighs against a finding of predominance of common issues." *Harding v. Tambrands,* 165 F.R.D. 623, 630 (D.Kan.1996) (refusing to certify strict liability class where it is possible that the plaintiffs' common defect theory could fail).

*Arch,* 175 F.R.D. at 488–89 (footnotes omitted). Because plaintiffs intend to prove their medical monitoring claim by using the theories of negligence and strict liability, the individual issues which are implicated by these theories still exist, and thus preclude class certification.

 Turning to the issues of affirmative defenses and statute of limitations, the Court

rejects plaintiffs' argument that these defenses are not available to defendants on the record. In the *Arch* opinion, it was explained, in some detail, that the issues of affirmative defenses and statute of limitations perforce raise numerous individual issues. *Id.* at 490–92. In *Barnes*, plaintiffs advanced the argument that these defenses were simply not available on the record as reflected by the Second Amended Complaint. Thus, the Court found that these issues necessarily did not preclude certification. *Barnes*, 176 F.R.D. at 491–92. However, upon review of the summary judgment record, the Court finds that defendants should not be barred from raising affirmative defenses and the statute of limitations. Although the Court reaches that conclusion now, the Court will explain its reasoning in much greater detail in a memorandum opinion disposing of defendants' summary judgment motions, which will shortly follow the issuance of this opinion.

However, for the purposes of this memorandum, it is only important to note that affirmative defenses and the statute of limitations are available to defendants. As explained in *Arch*, the affirmative defenses and the statute of limitations perforce raise individual issues. *Arch*, 175 F.R.D. at 485–86. For example, the defense of assumption of risk requires this Court to examine whether each and every plaintiff was subjectively aware of the risk and/or danger. *Id.* at 485. In determining whether the statute of limitations precludes a plaintiff from suing on his claim, the Court necessarily would have to examine when plaintiff's injury accrued, and whether plaintiff knew or should have known of the injury and its cause. This is clearly an individual issue.[4] The individual issues that are involved in determining whether affirmative defenses and the statute of limitations apply to each and every plaintiff are staggering. These issues clearly preclude certification.

In sum, the Court finds that the individual issues implicated by the facts and circumstances of this case preclude continuing this case as a class action. When the Court looks down the road to determine how this case would be tried, it is obvious that the litigation is unmanageable as a class action and would ultimately splinter into individual issues, which would have to be tried separately.

Hence, the Court will exercise its discretionary powers under Federal Rule of Civil Procedure 23(c)(1) and will decertify the class that had been previously certified by the August 22, 1997 Order. In light of the evidentiary record that is presently before the Court, it is plain as day that this case cannot proceed as a class action.

### III. Conclusion

Accordingly, for the foregoing reasons, this Court will deny defendants' motion for certification of class certification Order of August 22, 1997, for interlocutory appeal and for a stay of proceedings pursuant to 28 U.S.C. § 1292(b) or, in the alternative, for reconsideration of the August 22, 1997 Order. However, pursuant to Fed.R.Civ.P. 23(c)(1), the Court will decertify the class that had been certified by Order dated August 22, 1997, it appearing that this case cannot proceed as a class action.

---

4. It is also noted that the facts of this case implicate the individual issues of "consent" to an intentional tort and "comparative negligence." Two more issues which require individual analysis.